Kathleen R. IRWIN, et al., Plaintiffs,

v.

Owen T. MASCOTT, et al., Defendants.

No. C 97–4737 JL.

United States District Court,
N.D. California.

March 24, 1999.

Paul Arons, Law Offices of Paul Arons, Redding, CA, O. Randolph Bragg, Horowitz Horowitz & Associates, Chicago, IL, Lorraine Ellen Baur, Ukiah, CA, for plaintiffs.

Mark E. Ellis, Gregory W. McCracken, William C. Reeves, Murphy Pearson Bradley & Feeney, Sacramento, CA, for defendants.

## MEMORANDUM AND ORDER

LARSON, United States Magistrate Judge.

## INTRODUCTION

Plaintiffs filed their Motion for Class Certification, Defendants filed their Opposition, Plaintiffs filed a Reply, and the matter was submitted without oral argument on November 4, 1998. Supplemental pleadings were also submitted.

## NATURE OF THE CASE

Plaintiffs Kathleen R. Irwin, Nancy Heth, and Lorraine L. Castaneda have moved for class certification in this action against defendants Owen T. Mascott, Commonwealth Equity Adjustments, Inc. ("CEA"), and Eric W. Browning, for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* [FDCPA], and the California Unfair Business Practices Act, Cal. Business & Professions Code §§ 17200, *et seq.* [CUBPA.].

Plaintiffs seek certification of all issues, including liability, damages and injunctive relief.

### A. The Class Definition

Plaintiffs seek certification of the following class:

Umbrella Class

1. (i) all persons with addresses in California; (ii) to whom any defendant has sent or will send or has caused or will cause to be sent a letter containing demands or representation which are identical or similar to the demands or representations contained in any of the letters attached as Exhibits 1–10 to the Complaint; (iii) in connection with attempts to collect debts arising from dishonored checks (iv) which checks were not returned as undeliverable by the Post Office.

### B. Sub–Classes

Sub-class A: Those members of the umbrella class whose checks were written for personal, family or household purposes at any time on or after January 1, 1997 [the FDCPA class];

Sub-class B: Those members of the umbrella class whose checks were written for any purpose at any time on or after January 1, 1994 [the CUBPA class].

## REQUIREMENTS FOR CLASS CERTIFICATION GENERALLY

Pursuant to Fed.R.Civ.Proc., Rule 23, plaintiff's burden of establishing a factual

basis for class certification is not a heavy one. It is generally accepted that Rule 23 should be liberally construed.[1]

Except where underlying class facts and circumstances are sheer speculation, the initial burden on the party invoking the class action to show class facts is light. A well-pleaded complaint usually constitutes a prima facie showing of these facts sufficient to shift immediately the burden of disproving them to the party opposing the class. *Ibid.*

The prerequisites to a class action are that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### APPLICABILITY OF FAIR DEBT COLLECTION PRACTICES ACT

Congressional intent allowing for FDPCA class actions is expressed in 15 U.S.C. § 1692k. Definitions are provided in prior sections, e.g.,

15 U.S.C. § 1692a(3) provides:

The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

15 U.S.C. § 1692a(5) provides:

The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether

or not such obligation has been reduced to judgment.

In the complaint, Plaintiffs have alleged a class of FDCPA consumers. Complaint, Section VII. For purposes of class certification, the plaintiffs' allegations must be accepted as true, except where contradicted by the evidence.[2] Each of the three named plaintiffs incurred consumer debts. The defendants collect on checks written to major retail outlets, such as Wal–Mart, K–Mart and J.C. Penney, where the typical customer makes purchases for personal, family or household purposes. The defendants have not proffered any evidence that non-consumers constitute any part of the class.

A dishonored check written on a personal checking account is *prima facie* evidence that the check was written for personal purposes.[3] In another case involving a volume check collector, *Ditty v. CheckRite, Ltd.*, Civ. No. 2:95–CV–430C (D. Utah, 8/13/98 Order)[4] the court held that:

[T]he use of a personal check, as identified on the defendant's computer system, creates a rebuttable presumption that the debt was consumer in nature and is sufficient to make out plaintiffs' prima face case. *Id., citing Berrios v. Sprint Corp.*, 1998 WL 199842 at 10 (E.D.N.Y.1998). *Ditty v. Checkrite, Ltd.*, 1998 WL 663357, *3.

*See also, Wells v. McDonough*, 1998 WL 160876, *5 (N.D.Ill.1998),[5] which also involved check collection, in which class certification was granted because the personal nature of the transaction could be determined by looking at either the check or at defendant's records. Similarly in TILA

---

**1.** Newberg and Conte, *Newberg on Class Actions*, 3rd Ed., § 7.20, *citing Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2nd Cir. 1968).

**2.** *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975).

**3.** Although discovery in this case is far from complete, it appears that a significant number

of checks were referred by CheckRite, which does keep track of whether checks are personal or business checks. *See Supp. Decl. of Paul Arons.*

**4.** Exhibit 4 to Supplemental Declaration of Paul Arons.

**5.** Exhibit 5 to Supplemental Declaration of Paul Arons.

(Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*) cases, arguments such as the defendants' here have been rejected.[6] The fact that defendants do not maintain information that allows a precise determination of the nature of each purchase should not be a bar to proceeding under the FDCPA. *See, e.g., Gladstone v. The Master Collectors, Inc.* (N.D.Ga. Civ. No. 1:94–cv–0143–FMH), 2/1/95 Order Certifying Class, pp. 15–17.[7]

It would be possible to identify checks written for commercial purchases and distinguish them from those written for consumer purchases. In the context of a proposed class under 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the Seventh Circuit stated: "Such commercial purchases would frequently be readily identified by the listing of the name of the business as the purchaser in the contract."[8] It is likely that a commercial purchase by check would be on the business's checking account. Thus, all that may be required to identify consumers as members of the FDCPA class is to separate personal checks from business checks, or to look at the predominant customer base of the merchant.

## NUMEROSITY

The parties agree that the class consists of between 191,000 and 300,000 California residents, so numerosity is not at issue.

## COMMONALITY

■ There must be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "The fact that there is some factual variation among the class grievances will not defeat a class action.... A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)."[9]

### Preemption Claims

Some of the putative class members have state law claims which fall outside the one year statute of limitations for FDCPA claims. This would affect the temporal scope of the class, not whether a class should be certified.

Defendants argue that the FDCPA preempts state action.

■ There are three circumstances in which state law is preempted under the Supremacy Clause, U.S. Const. Art. VI, cl. 2, by federal law: (1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.[10] The overriding consideration is whether Congress intended to preempt state law.[11]

■ Congressional intent to preempt state law must be clear and manifest.[12] The mere existence of a detailed regulatory scheme does not by itself imply preemption of state remedies.[13] Moreover,

---

6. *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir.1974); *Bantolina v. Aloha Motors, Inc.*, 419 F.Supp. 1116, 1122 (D.Haw. 1976).

7. Exhibit 6 to Supplemental Declaration of Paul Arons.

8. *Haynes*, 503 F.2d at 1165 fn. 4.

9. *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir.1992), cert. denied, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993); see also *Keele v. Wexler*, 149 F.3d at 594.

10. *English v. General Elec. Co.*, 496 U.S. 72, 78–80, 110 S.Ct. 2270, 110 L.Ed.2d 65,(1990); *Southern Pac. Transp. Co. v. Public Utility Comm'n of State of Or.*, 9 F.3d 807 (9th Cir. 1993).

11. *Medtronic v. Lohr*, 518 U.S. 470, 496, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996); *English*, 496 U.S. at 80, 110 S.Ct. 2270.

12. *Industrial Truck Assn., Inc.*, 125 F.3d 1305, 1309 (9th Cir.1997), citing *Law v. General Motors Corp.*, 114 F.3d 908, 909–10 (9th Cir. 1997).

13. *Kearns v. Tempe Technical Institute, Inc.*, 39 F.3d 222, 226 (9th Cir.1994), citing *English v. General Elec. Co.*, 496 U.S. 72, 87, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

"preemption of state law by federal statute or regulation is not favored in the absence of persuasive reasons either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." [14]

### Express or Implied Preemption

In the present case, defendants rely upon the doctrine of implied preemption. Citing cases that hold that the FDCPA does not provide for a private right of injunctive relief, defendants argue that the FDCPA preempts injunctive relief under state law. Defendants briefly refer to 15 U.S.C. § 1692n, but omit any reference to its last sentence. That provision of the FDCPA provides, in its entirety:

> This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. *For purposes of this section, a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.*

15 U.S.C. § 1692n, *emphasis added.*

■ Thus, there is an express statement of Congressional intent *not* to preempt state laws, such as Cal.Bus. & Prof.Code §§ 17200 *et seq.*, which may provide for greater protection, in the form of injunctive relief, than does the FDCPA. In any case, this Court has jurisdiction over a sub-class B [the CUBPA class], for the full four year period provided by California law.[15]

### Pendent Party Jurisdiction

In *Finley v. United States,*[16] the Supreme Court held that pendent party jurisdiction could be exercised only with statutory authorization. Specifically, the Court stated that where a plaintiff brings an action against the United States under the Federal Tort Claims Act, the Act does not provide for pendent-party jurisdiction over additional *defendants* for whom an independent jurisdictional base is lacking. Congress enacted the supplemental jurisdiction statute, 28 U.S.C. § 1367, as part of the Judicial Improvements Act of 1990, as a legislative response to *Finley v. United States.*[17]

Subsection (a) of Section 1367 applies to cases brought pursuant to the district court's *federal question* jurisdiction.[18] It provides in pertinent part:

> Except as provided in subsections (b) and (c) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.* 28 U.S.C. § 1367(a), *emphasis added.*

The last sentence of section 1367(a) effectively abrogates the restrictions on pendent party jurisdiction formerly created by *Finley v. United States, supra,* in federal question cases.[19] Section 1367(b) permits the district court to decline to exercise supplemental jurisdiction over certain

---

**14.** *Chicago & N.W. Tr. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981).

**15.** *Ballard v. Equifax Check Services, Inc.,* CV S–96–1532 FCD (Feb. 22, 1999) E.D.Cal., Exhibit A to plaintiff's Supplemental Brief.

**16.** 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).

**17.** *See, Executive Software North America, Inc. v. U.S. District Court,* 24 F.3d 1545, 1555 (9th Cir.1994).

**18.** Actions based on diversity jurisdiction are expressly excepted from Section 1367(a), and are covered instead by Section 1367(b).

**19.** *See, e.g., CDS Diversified, Inc. v. Franchise Fin. Corp.,* 757 F.Supp. 202 (E.D.N.Y.1991).

types of plaintiffs or certain types of claims.

The Ninth Circuit has interpreted § 1367 as allowing a district court, at its discretion, to exercise jurisdiction over supplemental parties.[20] In the *Executive Software* case the court ruled that once a district court determines that supplemental jurisdiction is permissible under § 1367, then § 1367(c) provides the exclusive means by which the district court may decline supplemental jurisdiction. *Ibid.*

■ Accordingly, unless a court properly invokes a section 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted. *Id.* at 1556.

### Supplemental Jurisdiction

District courts in California have asserted supplemental jurisdiction in actions with facts similar to the case at bar. For example, in *Guzman v. Oxnard Lemon Associates Ltd.*,[21] the district court asserted supplemental jurisdiction in an employment discrimination class action with jurisdictional facts substantially similar to the case at bar. There the court stated:

The Court recognizes that the class, as certified, contains members who, because of the applicable statute of limitations, may not be able to maintain a federal claim under Title VII. The Court intends to exercise its supplemental jurisdiction over these class members pursuant to 28 U.S.C. section 1367. *Id.*

In *La Patagonia Compania v. Empresa Lineas Maritimas Argentinas*,[22] the district court went a step further and, in the interest of judicial economy, exercised supplemental jurisdiction over supplemental state claims, even though the statute of limitations had run on the principal federal claim. *Id.*, at *4.

**20.** *Executive Software, supra,* 24 F.3d at 1548–1549, 1551–1552.

**21.** 60 Fair Empl. Prac. Cas. (BNA) 436, 1992 WL 510094 (C.D.Cal.1992)

**22.** 1992 WL 289541 (N.D.Cal.1992).

In this action the court unquestionably has jurisdiction over named plaintiffs' Fair Debt Collection Practices Act claim. Since putative class members' claims are supplemental to the named plaintiffs' claims, this Court's exercise of supplemental jurisdiction over these claims is appropriate. The existence of such claims does not defeat commonality.

### CHECK WRITERS' INTENT

Defendants argue that a class member who wrote a check knowing it would not clear, did not incur a "debt" within the meaning of the FDCPA. Therefore, since it would be necessary to examine each class member to determine his or her state of mind when writing a check, individual questions will predominate over common questions and class certification should be denied for lack of commonality.

■ The FDCPA does not distinguish between debtors based on their intent.[23] Recently, the Seventh Circuit expressly ruled on the argument that there is a "fraud" exception to the FDCPA which would allow check collectors to operate outside the FDCPA. The court reasoned that:

[N]either the text nor underlying legislative history of the FDCPA lends itself to the recognition of a fraud exception. Indeed, *nothing*, in the Act makes inquiry in to the debtor's intent at the time he or she writes a subsequently-dishonored check. Its language focuses primarily, if not exclusively, on the conduct of debt collectors, not debtors. Absent some textual directive in the FDCPA, we will not alter that focus, for our task is to interpret the words of Congress, not add to them.

**23.** *Snow v. Riddle,* 143 F.3d 1350 (10th Cir. 1998), *Duffy v. Landberg,* 133 F.3d 1120 (8th Cir.1998) *Charles v. Lundgren,* 119 F.3d 739 (9th Cir.1997), *Brown v. Budget Rent–A–Car Systems, Inc.,* 119 F.3d 922 (11th Cir.1997), *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322 (7th Cir.1997).

*Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir.1998), *emphasis in the original.*

■ There is no fraud exception to the FDCPA and there will be no need to inquire into the intent of any individual class member in writing a check.

## PROOF OF RECEIPT

■ Defendants say that proof of whether each plaintiff actually received a notice in violation of the FDCPA would require individual investigation and defeat commonality. A debt collector violates the FDCPA by *sending* a notice containing unlawful provisions. Whether the notice is received is irrelevant to the issue of liability.[24] Even if receipt of the collection letter were required, there is an evidentiary presumption that a properly posted letter has been received by the addressee.[25] Moreover, those class members who sent money to defendants had certainly received notices.

## NOTICE OF SERVICE CHARGE: EXPRESS AGREEMENT

The possible existence of an agreement to pay a service charge might theoretically require individual inquiry into Plaintiffs' transactions. However, even if there were evidence of an express agreement to pay the service charge, the service charge agreement would be a void liquidated damages provision under California Civil Code § 1671.

■ The liquidated damages issue is equitable in nature and is a matter to be decided by the court.[26] The party seeking to rely on a liquidated damages clause bears the burden of proving its validity.[27]

The relevant subsection of Civil Code § 1671 is subsection (d). It applies to

consumer contracts to purchase goods and services, and prescribes the standard of invalidity of liquidated damages in such contracts.[28]

Cal. Civil Code section 1671 provides in pertinent part:

(c) The validity of a liquidated damages provision shall be determined under subdivision (d) ... where the liquidated damages are sought to be recovered from . . . :

(1) A party to a contract for the retail purchase, or rental, by such party of personal property or services, primarily for the party's personal, family, or household purposes; ...

(d) In the cases described in subdivision (c), a provision in a contract liquidating damages for the breach of the contract *is void* except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage. *Emphasis added.*

■ The first requirement for a valid liquidated damages provision under section 1671(d) is that the actual damages which would be sustained from a breach must be *"impracticable"* or *"extremely difficult"* to determine. *Emphasis added; Garrett supra,* 9 Cal.3d at 739, 108 Cal.Rptr. 845, 511 P.2d 1197. As a matter of law, collection costs are not difficult to compute.

■ The second requirement for a valid liquidated damages provision is that the amount of liquidated damages "must represent *the result of a reasonable endeavor by the parties* to estimate a fair average

---

24. *Maloy v. Phillips,* 64 F.3d 607 (11th Cir. 1995), *Mattson v. U.S. West Communications, Inc.,* 967 F.2d 259 (8th Cir.1992), *Kuhn v. Account Control Technology,* 865 F.Supp. 1443, 1450 (D.Nev.1994).

25. *See e.g., Legille v. Dann,* 544 F.2d 1, 9 (D.C.Cir.1976).

26. *Beasley v. Wells Fargo Bank,* 235 Cal. App.3d 1383, 1392–1393, 1 Cal.Rptr.2d 446 (1991)

27. *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.,* 9 Cal.3d 731, 738, 108 Cal.Rptr. 845, 511 P.2d 1197 (1973).

28. *Hitz v. First Interstate Bank,* 38 Cal. App.4th 274, 278, 44 Cal.Rptr.2d 890 (1995).

compensation for any loss that may be sustained." *Emphasis added; Hitz*, 38 Cal.App.4th at 288, 44 Cal.Rptr.2d 890. Such an estimate cannot occur without analysis of the loss that is to be compensated. Absent either of the two elements, a liquidated damages provision is void. *Id.*

The validity of the liquidated damages clause is determined by the circumstances existing when the fee provisions are inserted into an agreement, and not by subsequent events. *Id.* The parties' reasonable endeavor to estimate the loss must precede the setting of fees. *Id.* Cost analyses or studies made subsequent to the agreements are not relevant to the validity of the fees. *Id.*, at 291–292, 44 Cal.Rptr.2d 890.

In sum, there is no evidence suggesting that it is likely that notices setting forth defendants' "statutory fees" and other charges were posted and no basis to believe that defendants will be able to meet their burden of producing evidence of an agreement to pay such charges, Moreover, as a matter of law, those charges would constitute illegal liquidated damages. There is no valid need for an individual inquiry into each transaction. The possible existence of an agreement to pay a service charge would not defeat commonality in this case.

## TYPICALITY

The "claims or defenses of the class representative must be typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." [29]

In *Keele v. Wexler, cited supra,* the court reasoned that any person who has been subjected to debt collector conduct which violates the FDCPA is entitled to statutory damages, and therefore has suffered the same injury as unnamed class members. So long as the injuries of the named plaintiffs and the class members arose out of the same conduct, the named plaintiffs may properly represent the class. *Id.* In the present case, the named plaintiffs are seeking to represent a class consisting of those who received letters containing the same or similar demands as those that they received. Their claims are therefore typical of those of the class. The fact that Ms. Castaneda and Ms. Irwin may also have a right to statutory damages, injunctive relief and declaratory relief, but may not have a right to actual damages, does not render their claims atypical.

There is no conflict between the named plaintiffs and class members which would affect typicality. As courts recognize, in consumer class actions where recoveries are small, often the only realistic prospect of any relief is a class action.[30]

So long as the plaintiffs' claims arise out of a common nucleus of operative fact, and otherwise meet Rule 23 requirements, the fact that there are multiple alleged violations of the FDCPA is no obstacle to class certification.[31]

Defendants also contend that the fact that some of the named plaintiffs may have had attorneys at the time that they received some of the letters, and may have received advice from these attorneys, renders their claims atypical. Specifically, defendants argue that this means that the "least sophisticated debtor" standard should not apply to these plaintiffs. The "least sophisticated debtor" standard is an objective standard, applied when the issue is whether a communication from a debt

**29.** *Keele v. Wexler,* 149 F.3d at 595, quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983).

**30.** *Duran v. Credit Bureau of Yuma, Inc.,* 93 F.R.D. 607, 610 (D.Ariz.1982).

**31.** *See e.g., Newman v. Checkrite of California, Inc.,* 912 F.Supp. 1354 (E.D.Cal.1995).

collector violates the FDCPA, for instance a debt collector made a threat to take action that cannot legally be taken, in violation of 15 U.S.C. § 1692e(5). It is an objective standard, imposed to further the protective purposes of the FDCPA.[32] The standard applies even to those who have lawyers.

## ADEQUACY OF CLASS REPRESENTATIVES

A prerequisite for class certification under Rule 23 is that the person representing the class must be able "fairly and adequately to protect the interests" of all members of the class. Fed.R.Civ.P. 23(a)(4). Representation is adequate where: (1) the attorney representing the class is qualified and competent; (2) the class representative does not have interests antagonistic to the remainder of the class,[33] and (3) the class representative has a sufficient interest in the outcome of the case to ensure vigorous advocacy.[34]

Defendants attack the plaintiffs' adequacy to represent the class on one ground alone...lack of financial resources to pay for notice and administration costs. In making this argument defendants inflate the size of the potential class by 100 percent, and ignore the fact that, based on defendants' information, only 10% of the class will be mailed notice of this action and given an opportunity to opt out.

Defendants argue that there may be as many as 300,000 class members and that it is going to cost $213,000 to provide class notice. The cost of mailing would be $0.40 per person. Multiplying the per person cost by the approximate class total of 191,000, the real cost of mailing notice of this class action would be $76,400.

There should be no need to send notices to more than about 10 percent of these, based on the information defendants have provided so far. Plaintiffs are seeking certification for the entire class under Rule 23(b)(2), which does not require notice. Notice, and an opportunity to opt out, should be required only for those who have paid defendants money above the face amount of the check and may be entitled to a refund of that money. According to defendants, this is 7 to 10 percent of the total class. Assuming that 20,000 class members are entitled to either actual damages or restitution, or both, notice costs will be approximately $8,200.00.

Plaintiffs' counsel represent to the Court that they know what class actions cost, and that they have the ability to advance those costs. Plaintiffs objected to discovery of both their and their counsels' financial resources because the representation that litigation costs will be advanced by counsel is sufficient.[35]

The anticipated costs in this case are far less than those in *Newman v. Checkrite*,[36] in which settlement was negotiated by the same counsel on both sides as the case at bar. In *Newman*, 183,000 class members had paid fees over the face amounts of their dishonored checks. In the case at bar, only about 19,000 class members paid such fees and are, therefore, potentially entitled to monetary damages.

Consequently, the process of identifying, notifying and paying these class members would be much lower. Plaintiffs' counsels' plan for administering the *Newman* class, a much larger one than in this case, was approved by the court. Counsel has·dem-

**32.** *Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222, 1227 (9th Cir.1988)

**33.** *See Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978)

**34.** *See Riordan v. Smith Barney,* 113 F.R.D. 60, 64 (N.D.Ill.1986)

**35.** *Sherman v. Widder,* Fed.Sec.L.Rep. (CCH) P98,054 Fed.Sec.L.Rep. (CCH) P98,054, 1994

WL 159450 (S.D.Cal.1994), *Harris v. General Dev. Corp.,* 127 F.R.D. 655 (N.D.Ill.1989), *Haywood v. Barnes,* 109 F.R.D. 568, 580 (E.D.N.C.1986), In re Cement and Concrete Antitrust Litigation, 27 Fed.R.Serv.2d (Callaghan) (D.Az. 1979).

**36.** (E.D.Cal. Civ. Mo. 93–1557).

onstrated their ability to manage this type of class action.

## CERTIFICATION UNDER RULE 23(b)(2)

■ Class certification may be appropriate where a defendant acted or refused to act in a manner applicable to the class generally, rendering injunctive relief or declaratory relief appropriate to the class as a whole. Fed.R.Civ.P. 23(b)(2). Rule 23(b)(2) generally does not extend to cases in which the appropriate final relief "relates exclusively or predominantly to money damages." [37]

■ Plaintiffs are seeking injunctive and declaratory relief, restitution, and statutory and actual damages. Statutory damages are limited to one percent of defendants' net worth, up to $500,000. 15 U.S.C. § 1692k. Even assuming a combined net worth for defendants of $10,000,-000, total statutory damages would be only $100,000. Distributed pro-rata to a class of 191,000 people, these damages would be $0.52 per person. Clearly, statutory monetary damages do not predominate.

■ Actual damages consist of the amount which class members paid above the face amount of each check. Plaintiffs do not at this point have any evidence regarding the total amounts collected from class members. Defendants, however, have proffered evidence that they only successfully collect on 7 to 10 percent of all checks referred to them for collection. Using the 10 percent figure, defendants have collected from 19,100 of the 191,000 accounts referred. Therefore, 90 percent of those whose rights allegedly were violated are not entitled to actual damages in this lawsuit. These 171,900 class members who are not entitled to actual damages are still entitled to injunctive and declaratory relief. Even where damages may eventually be awarded, if injunctive relief is a significant aspect of the relief sought, Rule 23(b)(2) certification is appropriate. *Gelb v. American Tel. & Tel. Co.*, 150 F.R.D. 76, 78 (S.D.N.Y.1993).

## INJUNCTIVE AND DECLARATORY RELIEF

Defendants argue that injunctive relief is not appropriate because defendant Mascott no longer works for CEA, and because since January 1, 1997, California Civil Code § 1719 expressly allows for a $25.00 service charge.

Mascott has indeed left CEA, and apparently has been replaced by new lawyers, "Homan & Stone." This may remove any need for injunctive relief against Mascott. Defendant CEA's practices have not changed, however. Homan & Stone send out letters, on behalf of CEA,[38] which are identical or similar to those previously sent out by Mascott.

Defendants argue that California Civil Code § 1719 provides for a lawful $25.00 service charge, which renders any need for injunctive relief moot.

Defendants demand more than the $25.00 service charge. Defendants have not explained what bearing their potential entitlement to a $25.00 service charge on checks written after 1996 has to do with the monetary demands which they routinely make, for various fees and penalties.[39]

■ Moreover, California Civil Code § 1719 is not retroactive, and therefore CEA may not use that statute to justify

---

**37.** See *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 450–451 (N.D.Cal.1994)

**38.** Defendants continue to send collection letters which are not simply similar, but which are identical to those sent to the named plaintiffs, with the name "Homan & Stone" having been substituted for "Owen T. Mascott." *See* Exhibits 2 and 3 to Supplemental Declaration of Paul Arons.

**39.** Defendants initially demanded that Kathleen Irwin pay them $80.83 above the face amount of her $49.71 check. Their last demand was for $169.83 above the face amount of her check. Defendants initially demanded that Nancy Heth pay them $112.73 above the face amount of her $186.65 check. Their last demand was for $211.83 above the face amount of her check. See Exhibits 1, 2, 3 and 6 to the Complaint.

demands made in connection with checks written prior to January 1, 1997, the effective date of the amended statute.

In ruling on this motion the substantive allegations of the complaint are generally taken as true.[40] Plaintiffs have alleged a continuing practice by defendants of sending out letters in violation of the FDCPA. Other than the representation that Mascott no longer works for CEA, defendants have not proffered any evidence that they have stopped sending out letters which violate the FDCPA. Accordingly, the request for injunctive relief is not moot.

## SERVICE CHARGES ARE NOT AN EXCEPTION TO FDCA, AND DO NOT AFFECT CLASS CERTIFICATION

▆▆ Under 15 U.S.C. § 1692f(1), the collection of any amount over the face amount of a dishonored check is prohibited unless the excess amount is expressly authorized by the agreement creating the debt or permitted by law.[41] The burden of proving a statutory exception falls on the party seeking to reap the benefits of the exception.[42] In this action defendants seek the benefit of the statutory exception to 15 U.S.C. § 1692f(1), which allows excess charges on a debt where expressly authorized by the agreement creating the debt. Therefore, defendants must prove by a preponderance of the evidence that they had a lawful agreement with each check writer to pay the additional charge.

Even if there were evidence that a service charge notice had been posted, that would not be enough. There must also be

evidence that the check writer both saw the notice and intended to agree to its terms.[43] Pursuant to 15 U.S.C. § 1692f(1), such an agreement must have been express. Given the nature of the relationship between defendants and the merchants, it is doubtful that in any individual case defendants can produce any evidence that a service notice was posted by the merchant and seen by the check writer who expressly agreed to its terms.

## DEFENDANTS' ASSERTION OF A STATE LAW PRIVILEGE IS NOT AN OBSTACLE TO CLASS CERTIFICATION

▆▆ As an affirmative defense, defendants assert a privilege for *pre-litigation* communications. This privilege applies only when, prior to commencement of a lawsuit, a communication having some relation to a proceeding *that is contemplated in good faith **and** is under serious consideration* is made by a possible party to the litigation. *Emphasis added; Laffer v. Levinson, Miller, Jacobs & Phillips,* 34 Cal.App.4th 117, 40 Cal.Rptr.2d 233, (1995), *citing, Restatement Second of Torts,* Section 586, Comment e, p. 248.[44] The mere possibility that a proceeding *might be* instituted *is not to be used* as a cloak to provide immunity for tort actions *when the possibility is not seriously considered. Ibid.; Herzog v. "A" Company, Inc.,* 188 Cal.Rptr. 155, 138 Cal.App.3d 656, 660–662 (1982). (Emphasis added).

▆▆ Defendants have not proffered any facts supporting a conclusion that each

40. *Blackie v. Barrack,* 524 F.2d at 901 n. 16.

41. *Newman v. Checkrite of California, Inc.,* 912 F.Supp. 1354, 1368 (E.D.Cal.1995).

42. *United States v. First City Nat'l Bank,* 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967), citing, *Federal Trade Commission v. Morton Salt Co.,* 334 U.S. 37, 45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948); *EEOC v. Kamehameha Schools,* 990 F.2d 458, 460 (9th Cir. 1993); *Nixon–Egli Equipment Co. v. John A. Alexander Co.,* 949 F.Supp. 1435, 1443 (C.D.Cal.1996)

43. *Newman v. Checkrite of California, Inc., supra,* 912 F.Supp. at p. 1369.

44. *See also, Rubin v. Green,* 4 Cal.4th 1187, 1194, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993), noting that in connection with pre-litigation activity, the privilege applies to communications "with some relation to a proceeding that is *actually contemplated in good faith and under serious consideration* by . . . a possible party to the proceeding." *Emphasis added.*

time a collection letter was sent, a CEA representative had made an individual determination whether or not the recipient would be sued if they paid the demand. The computerized nature of this volume collection operation makes it unlikely that individualized attention was given to any of the 191,000 accounts defendants sought to collect. Moreover, since only eight lawsuits were ever filed,[45] out of apparently 171,900 people who did not pay defendants' demands, some unique factors had to trigger a lawsuit. The fact that eight people were actually sued does not give rise to the conclusion that the litigants will have to individually sift through 191,000 other accounts to divine defendants' intent. Clearly, defendants' uniform practice was never to sue check writers, and whatever policy they followed, or intent they possessed, existed on a class-wide, not an individual basis.

 Likewise, defendants' interpretation of the "creditor's privilege" [46] will not require an examination of individual accounts, since it only applies to communications with third parties, not those between a creditor and an alleged debtor. *Newman v. Checkrite of California, Inc.,* supra, 912 F.Supp. at p. 1374.

### DEFENDANTS' INTENT TO FILE LAWSUITS IS NOT RELEVANT TO CLASS CERTIFICATION

 Defendants argue that plaintiffs will have to show on a case-by-case basis that defendants did not have any intent to sue. This is not correct. Where defendants rarely, if ever, file collection lawsuits, that fact alone may be sufficient to prove a lack of intent.[47] Even assuming that defendants had some criteria for de-

termining when a lawsuit would be filed, such as a monetary minimum, current employment, or other indicia that filing a lawsuit will probably be profitable, plaintiffs will be able to determine which accounts met such criteria. The threats to sue which were sent to people who did not meet these criteria would be violations.[48]

### MANAGEABILITY OF ISSUES FOR TRIAL

There are no manageability problems which will interfere with an orderly trial on the merits. The violations alleged in the complaint are systemic. Liability issues that remain for trial will be determined according to the lawfulness of the systemic decisions and actions taken by defendants. Damages may be calculated based on defendants' computer records.

For instance, on the issue of the threats to file suit and to attach property and wages, as probative, if not determinative, on intent, plaintiffs will proffer evidence that defendants rarely sued anyone and have never executed on a judgment. Defendants will counter with their testimony that they always intended to sue people and attach their property. The trier of fact may well find for one of the parties on that issue.

Many of the issues, for instance, the legality of the demands for payment pursuant to Penal Code § 490.5, are legal issues that will be decided by the Court. *See e.g., Newman v. Checkrite of California, Inc., supra,* 912 F.Supp. at 1354, in which the majority of the issues raised by the defendants in an almost identical factual setting were decided on summary judgment.

---

45. Although defendants claim that they have filed 200 lawsuits, they have only produced eight lawsuits in discovery. *See* Supplemental Declaration of Paul Arons.

46. Cal. Civil Code § 47(c) provides, in pertinent part, that a privilege communication is one made "In a communication, without malice, to a person interested therein, (1) by one who is also interested ..." The only reference in that subdivision to particular kinds of

communications are those between a the prospective employer of a job applicant, and that applicant's current or former employers. The characterization of this as a "creditor's privilege" appears to originate with defendants.

47. *United States v. National Financial Services, Inc.,* 98 F.3d 131, 138 (4th Cir.1996)

48. *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 25–26 (2nd Cir.1989).

## CLASS NOTICE WILL NOT BE A PROBLEM

Notice does not need to be sent to 23(b)(2) class members who did not incur actual damages. This is 90 percent of the class, according to defendants.

Notice must be sent to the Rule 23(b)(3) class, those who paid money above the face amount of the check and are entitled to actual damages and/or restitution. Based on defendants' evidence, this will be less than 20,000 people, and notice costs will be approximately $8,000.00.

Statutory damages, on the other hand, may be owed to the entire Rule 23(b)(2) class of 191,000 people. There is an open question of whether a *de minimus* recovery should be distributed to class members or go to a *cy pres* recovery.[49] In whatever manner statutory damages are handled, if plaintiffs prevail, it is the defendants, not the plaintiffs, who will pay administration costs. The "economic reality" · test to which defendants refer is whether, given the nature of a dispute, including the potential damages and associated attorneys' fees and costs, the economic reality is that individual plaintiffs are unlikely to pursue their individual claims, especially where, as here, the individual recoveries are likely to be small.[50]

## CONCLUSION

In accordance with the findings and conclusions contained in this Memorandum and Order, it is, subject to alteration or amendment under Fed.R.Civ.P. 23(c), conditionally ORDERED:

Class Certification. Civil Action No. 97–4737, styled Kathleen L. Irwin, et al. v. Owen T. Mascott, et al. shall be maintained as a class action on behalf of the following class of plaintiffs:

Umbrella Class

1. (i) all persons with addresses in California; (ii) to whom any defendant has sent or will send or has caused or will cause to be sent a letter containing demands or representation which are identical or similar to the demands or representations contained in any of the letters attached as Exhibits 1–10 to the Complaint; (iii) in connection with attempts to collect debts arising from dishonored checks (iv) which checks were not returned as undeliverable by the Post Office.

**Sub–Classes**

Sub-class A: Those members of the umbrella class whose checks were written for personal, family or household purposes at any time on or after January 1, 1997 [the FDCPA class];

Sub-class B: Those members of the umbrella class whose checks were written for any purpose at any time on or after January 1, 1994 [the CUBPA class].

With regard to claims for damages and injunctive relief, with respect to the following causes of action:

1. Violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA").

2. Violations of the California Unfair Business Practices Act, Cal. Business & Professions Code §§ 17200, et seq. ("CUBPA");

Such claims are premised upon the allegation that it is the policy and practice of defendants to cause collection letters in the forms of Exhibits 1–10 (attached to the Complaint) to be sent to residents of California in an attempt to collect dishonored checks, in violation of the FDCPA and the CUBPA, by demanding unauthorized amounts, by contradicting and overshadowing the violation notice, by demanding amounts which cannot lawfully be recovered, by falsely representing that a communication is from an attorney, by falsely

---

49. *See, e.g., Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 345 (7th Cir.1997), *Gammon v. G.C. Services,* 162 F.R.D. 313, 321 (N.D.Ill.1995).

50. *Eisen,* 417 U.S. at 160, 94 S.Ct. 2140.

representing that the California Penal Code has been violated, by threatening to communicate false information to a credit reporting agency, and by using false representations or deceptive means in an attempt to collect a debt. 15 U.S.C. §§ 1692e, e(2), e(3), e(4), e(5), e(7), e(8), e(10), f and f(1).

Class Representatives; Class Counsel. Subject to further order of the court, Kathleen R. Irwin, Nancy Heth, and Lorraine L. Castaneda are designated as class representatives and Paul Arons, O. Randolph Bragg, III and Lorraine Ellen Baur are designated as counsel for the class.

**Notice.**

(A) Class counsel shall, on or before a date ninety days from the date of this Order, cause to be mailed in the name of the clerk by first class mail, postage prepaid, to all class members who can be identified through reasonable efforts, a notice in substantially the form as Attachment A.

**Exclusion:** Class members may exclude themselves from the class by filing with the "Committee of Counsel" by a date to be determined the form attached to Exhibit A or some other appropriate written indication that they request exclusion from the class. Class counsel are designated as a Committee of Counsel to arrange for a post office box and to receive and tabulate requests for exclusion.

**List of Class Members:** Class counsel will file with the clerk, by a date to be determined, an affidavit identifying the persons to whom notice has been mailed and who have not timely requested exclusion.

WHEREFORE, for the reasons stated herein, it is hereby ordered that the motion for class certification is granted.