Ella TOWER et al., Plaintiffs,

v.

**Paralee MOSS,
Plaintiff-Intervenor-Appellant,**

v.

**HOME CONSTRUCTION COMPANY OF
MOBILE, INC., Defendant-Appellee.**

No. 78–3659.

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1980.

H. Diana Hicks, New Orleans, La., for plaintiff-intervenor-appellant.

Richard L. Thiry, Mobile, Ala., for defendant-appellee.

Before TUTTLE, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff, Paralee Moss, instituted this action under the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Federal Reserve Board Regulations, 12 C.F.R. § 226.1 *et seq.* [Regulation Z], the Alabama Consumer Finance Act, *Ala.Code*, § 5–19–1 *et seq.*, and the common law. The district court granted summary judgment in favor of the defendant as to the federal claims on the ground that this particular credit transaction was exempt from the Truth in Lending Act disclosure requirements because in its view the transaction

was for "business or commercial purposes" [15 U.S.C. § 1603(1)]. *Tower v. Home Construction Co. of Mobile, Inc.*, 458 F.Supp. 112 (S.D.Ala.1978). Additionally, in its discretion the district court simultaneously dismissed the pendent state law claims. *Id.* at 117. We hold that the purpose of this credit transaction was "primarily for personal, family, household, or agricultural purposes" [15 U.S.C. § 1602(h)], and therefore this credit transaction falls within the ambit of the Truth in Lending Act. Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.[1]

*History of the Litigation*

This suit originated as a class action alleging that the defendant violated the Truth in Lending Act, the Alabama Consumer Finance Act, and the common law of Alabama. On May 20, 1977, the district court certified the plaintiff class. The plaintiff, Paralee Moss, was one of 145 members of the class.

An agreement of settlement was entered in the case and approved by the district court on June 20, 1977. By the terms of the agreement, each class member could choose (1) to opt out of the class or (2) to recover damages from the defendant by a fifteen percent reduction in the amount owed to the defendant or (3) to rescind the mortgage and note and receive from the defendant of all state and federal statutory monetary penalties and common law damages, less the fair value of the goods and services previously delivered by the defendant.

The plaintiff chose the above delineated "rescission alternative", but the defendant challenged the plaintiff's individual claim. On August 18, 1978, the district court entered an order confirming settlement of the individual claims of 143 members of the class: 103 class members received 15% re-

---

1. The district court possesses power to adjudicate pendent claims that "derive from a common nucleus of operative fact" if the claims are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138,

16 L.Ed.2d 218 (1966). *See generally* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3567 (1975). In the first instance, the district court in its discretion on remand should decide whether the plaintiff's pendent claims should be reinstated.

ductions and 40 class members rescinded and received damages. Only the individual claims of two class members, Ms. Moss and Winnie Harris, remained in dispute after August 18, 1978.

The defendant thereafter filed a motion for summary judgment as to Ms. Moss' individual claim, alleging that her claim was not a consumer credit transaction and was therefore exempt from Truth in Lending Act coverage.

On September 29, 1978, the district court rendered its decision granting the defendant's motion for summary judgment as to the plaintiff's Truth in Lending Act claims and striking the plaintiff's pendent state claims. The district court on that same day entered a separate judgment against the plaintiff. The plaintiff filed a notice of appeal from this judgment on October 26, 1978.

Through inadvertence, however, counsel for the plaintiff did not request Federal Rule of Civil Procedure 54(b) certification from the district court before lodging this appeal. Supplemental Brief of Appellant at 4.

On April 30, 1979, the district court noted that the only remaining individual claim (that of Winnie Harris) had been settled, and ordered that this case in its entirety be dismissed from its active docket. Second Supplemental Record on Appeal at 3. The district court on July 9, 1979 entered an order approving the terms of the parties' settlement of Harris' claim. *Id.* at 4–5.

This court at oral argument *sua sponte* questioned its jurisdiction to entertain this appeal in light of the plaintiff's failure to secure Rule 54(b) certification from the district court.

After appellate oral argument, the plaintiff applied to the district court for Rule 54(b) certification *nunc pro tunc.* On May 30, 1980, the district court issued the *nunc pro tunc* certification of its September 29, 1978 judgment as requested. *Id.* at 6–7.

*Appellate Jurisdiction*

■ This court has authority to entertain "appeals from all final decisions of the dis-

trict courts of the United States." 28 U.S.C. § 1291. Rule 54(b) provides that in actions involving multiple claims for relief or multiple parties, an order that disposes of one or more but fewer than all of the claims for relief asserted, or completely determines the rights and liabilities of one or more but fewer than all of the parties, does not end the action in the district court and is subject to revision at any time unless the district court has (1) expressly determined that there is no just reason for delay and (2) expressly directed entry of judgment. In the absence of a certification by the district court that meets these two requirements, a partial disposition of a multi-claim or multi-party action is ordinarily not a final appealable order. *See generally* 10 C. Wright & A. Miller, Federal Practice and Procedure §§ 2653–2660 (1973).

In this case, the plaintiff's counsel did not request Rule 54(b) certification from the district court of its September 29, 1978 order dismissing the plaintiff's complaint while another individual plaintiff's (Winnie Harris's) claim remained to be considered by the district court.

■ Usually if a Rule 54(b) certification has not been obtained at the time an appeal is filed, the appellate court will dismiss the appeal without prejudice as interlocutory. However, there are some exceptions to the Rule 54(b) certification requirement, all of which are ably and comprehensively discussed in the seminal case of *Huckeby v. Frozen Food Express*, 555 F.2d 542 (5th Cir. 1977). We find that the exception formulated in *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973), is applicable here, and consequently this court has jurisdiction to consider this appeal.

In *Jetco* two plaintiffs brought suit against Engineer Testing Laboratories, Gardiner, and Gardiner Electronics Company. The district court dismissed the plaintiffs' claims against one of the defendants, Engineer Testing Laboratories. This order was not a final judgment since it did not adjudicate the plaintiffs' rights against Gardiner or Gardiner Electronics Company; no Rule 54(b) certification was entered.

Several months later, the district court entered an agreed judgment disposing of the plaintiffs' suit against the other two defendants that was not a final judgment since it did not determine plaintiffs' rights against Engineers Testing Laboratories; again, no Rule 54(b) certification had been issued. The plaintiffs appealed from each order separately at the time each was entered. This court held that—since the two orders, when considered together, "terminated this litigation just as effectively as would have been the case had the district judge gone through the motions of entering a single order formally reciting the substance of the earlier two orders"—the first order was appealable under the practical approach to finality previously enunciated by the Supreme Court. *Id.* at 1231. *See Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

In this case the district court's orders of September 29, 1978 and April 30, 1979 when considered together effectively terminated this litigation. Therefore, under the *Jetco* rationale this court has jurisdiction to review the order dismissing Moss's complaint.[2]

*Truth in Lending Act*

The purpose of the Truth in Lending Act[3] is to enhance economic stabilization and competition among financial institutions by requiring the meaningful disclosure of credit terms to consumers. *See* U.S.Code Cong. and Admin.News, 90th Congress, Second Session, p. 1962–63. The Act does not regulate the credit industry, nor does it impose ceilings on credit charges. The statute contains an express statement of this legislative purpose:

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.

15 U.S.C. § 1601.

The Truth in Lending Act provides not only for enforcement by the Federal Trade Commission and other federal agencies, but it also establishes a civil cause of action by a consumer against a creditor who fails to make the required disclosures. 15 U.S.C. § 1640(a). This private cause of action may be brought in either federal or state court. 15 U.S.C. § 1640(e). However, the Truth in Lending Act does not apply to all credit transactions; the Act does not cover "[c]redit transactions involving extensions of credit for business or commercial

---

**2.** Accordingly, we leave for yet another day consideration of plaintiff's alternative contention that the appeal should not be dismissed since the failure to obtain the Rule 54(b) certificate was allegedly inadvertent and the district court has now entered the required certificate *nunc pro tunc*. This court in 1963 held that belatedly entered Rule 54(b) certificates would not retroactively confer appellate jurisdiction in these situations, since the district court was without jurisdiction to enter the delayed certificate. *Bush v. United Benefit Fire Insurance Company*, 311 F.2d 893 (5th Cir. 1963). More recently, this court questioned the wisdom of the *Bush* holding and noted that some commentators support giving retroactive effect to Rule 54(b) *nunc pro tunc* certificates. *Kirtland v. McDermott & Co.*, 568 F.2d 1166, 1170 (5th Cir.

1978). *See* 10 C. Wright & A. Miller, Federal Practice and Procedure § 2660 at 88–89 (1973).

**3.** The Truth in Lending Act is subchapter 1 of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601–1667. The Board of Governors of the Federal Reserve System is authorized by 15 U.S.C. § 1604 to "prescribe regulations to carry out the purpose of this subchapter." Pursuant to this authority, the Board has issued an interpretative regulation, popularly referred to as "Regulation Z." 12 C.F.R. §§ 226.1–.1503. *See generally*, "Civil Remedies of Consumer for Violations of Truth in Lending Act," 11 A.L.R. Fed. 815 (1972). For a recent appraisal of the Truth in Lending Act, *see* Lander & Rohner, *A Functional Analysis of Truth in Lending*, 26 UCLA L.Rev. 711 (1979).

purposes . . .." 15 U.S.C. § 1603(1). *See also* 12 C.F.R. § 226.3(a).

Rather, the disclosure requirements of the Act only apply to consumer credit transactions—those "in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes." 15 U.S.C. § 1602(h). *See also* 12 C.F.R. § 226.2(k).

We must examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether this transaction was primarily consumer or commercial in nature. *Poe v. First Nat. Bank of DeKalb County,* 597 F.2d 895, 896 (5th Cir. 1979); *Gallegos v. Stokes,* 593 F.2d 372, 375 (10th Cir. 1979).[4] The pertinent facts necessary to resolve this issue are not here in dispute.

### Context Facts

The property at issue in this lawsuit is located in Prichard, Alabama. The lot was purchased by plaintiff's mother, and the modest shotgun house that was built thereon around 1928 remains there today. The plaintiff, a single, relatively uneducated woman in her sixties, resided in the house until she was grown, and her mother and her sister lived in the house together until 1957. In that year her mother passed away, leaving the home jointly to Ms. Moss and her sister. Ms. Moss's sister continued to reside in the home until her death in 1973, at which time title to the property vested exclusively in the plaintiff. The house remained unoccupied for more than a year after the death of plaintiff's sister. During this period of vacancy, the home was vandalized.

The plaintiff presently resides in Detroit where she works as a laborer (release woman) at a sparkplug factory. She rents an apartment in Detroit. She owns no other home or realty other than her Seminary Street family home in Prichard. Ms. Moss expects to live in this Prichard home upon her retirement.

On July 14, 1975, Ms. Moss contracted with and received an extension of credit from the defendant, Home Construction Company, in connection with certain repairs and improvements the defendant was to make on the plaintiff's property. A mortgage was taken on the property by the defendant to secure the extension of credit. On July 23, 1975, Ms. Moss entered into another contract with the defendant for similar additional work.

In August 1975, while the improvements were being completed, Ms. Moss agreed to rent the house to a third party for $60.00 a month in order to defray the repair, tax, and insurance expenses connected with the house.

In summary, therefore, under the factual showing Ms. Moss resided in the Prichard Street home for a long period of time, visited that home periodically over the years, and fully expects to reside in the home upon her retirement. Additionally, the intervening lessee is staying there largely in a custodial role paying nominal rent. Under these factual circumstances

---

**4.** While prior jurisprudence is an aid to classification, the nature of the credit transaction is ultimately determined by the entire surrounding factual circumstances. *See, e. g., Poe v. First National Bank of DeKalb County, supra* (purpose of loan transaction was to finance corporation, and thus transaction is commercial, notwithstanding that individual debtors joined in note and gave personal security); *Gerasta v. Hibernia Nat'l Bank,* 411 F.Supp. 176, 185 (E.D.La.1975), *modified,* 575 F.2d 580 (5th Cir. 1978) (second mortgage on future intended residence is consumer transaction); *Adema v. Great N. Dev. Co.,* 374 F.Supp. 318, 319 (N.D.Ga.1973) (lot purchases for investment reasons are commercial transactions); *Puckett v. Georgia Homes, Inc.,* 369 F.Supp. 614, 619 (D.S.C.1974) (purchase of home for intended rental purpose is commercial transaction); *Sapenter v. Dreyco, Inc.,* 326 F.Supp. 871, 873 (E.D.La.), *aff'd,* 450 F.2d 941 (5th Cir. 1971), *cert. denied,* 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1972) (second mortgage on residence to meet payments on rental property is commercial transaction); *Allen v. City Dodge, Inc.,* 5 Cons. Cred. Guide (CCH) ¶ 98,428 (N.D.Ga. Sept. 8, 1975) (truck purchase for personal as well as business use is a consumer credit transaction).

evaluated in their totality, we conclude that the purpose of this credit transaction was "primarily for personal, family, household, or agricultural purposes." Under these facts, the Truth in Lending disclosure requirements do apply to this credit transaction. Summary judgment was therefore incorrectly granted. Accordingly, we REVERSE and REMAND to the district court for further proceedings in accordance with law.