Robert D. SLENK; Chris Slenk,
Plaintiffs–Appellants,

v.

TRANSWORLD SYSTEMS, INC.,
Defendant–Appellee.

No. 99–16231.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 2000

Filed Jan. 10, 2001

John Harris Paer, Honolulu, Hawaii, for the plaintiffs-appellants.

Neil F. Hulbert, Alston Hunt Floyd & Ing, Honolulu, Hawaii, for the defendant-appellee.

Before: HUG, Chief Judge, TROTT, and WARDLAW, Circuit Judges.

TROTT, Circuit Judge:

Robert D. Slenk ("Slenk") and his wife, Chris Slenk, appeal the United States District Court for the District of Hawaii's ("the district court") order granting summary judgment to Transworld Systems ("Transworld"). Slenk brought this consumer protection action alleging that Transworld had engaged in abusive debt collection practices violative of the Fair Debt Collection Practices Act ("FDCPA"), the Hawaii Unfair and Deceptive Acts and Practices Act ("UDAP"), and Hawaii's statutory prohibition on monopolies and illegal restraints of trade. Transworld argues that Slenk is precluded from invoking the protections afforded by the foregoing statutes because the debt at issue was not a consumer debt. We have jurisdiction under 28 U.S.C. § 1291, and REVERSE and REMAND the case to the district court for further proceedings.

# I

## BACKGROUND

Slenk is the owner and sole employee of Slenk's Builders. Slenk's Builders is licensed as a general contractor to do carpentry work in Hawaii. On December 9, 1993, Slenk purchased a backhoe from Hawaii Tractor, Ltd. Slenk contends that he purchased the backhoe for the sole purpose of building his family home and driveway. It is undisputed that the backhoe was ultimately used by Slenk for this purpose only and was sold immediately thereafter. The backhoe was never used by Slenk's Builders, nor has Slenk's Builders ever been licensed to use a backhoe.

However, the record reflects substantial documentary evidence suggesting that the backhoe was purchased for business purposes. The invoice documenting the sale ("Invoice") lists "Slenk Bldrs" as the purchaser, and shows that Slenk's Builders paid the lower 0.5% sales tax applicable to business purchases, rather than the customary 4% sales tax charged for consumer purchases.

In an application for a city building permit for the construction of his home and driveway, dated April 4, 1994, Slenk identified the building contractor as "Slenk's Bldrs." By making this representation, Slenk was able to streamline the permit process by avoiding additional procedural requirements that are required of a private owner-builder who does not have a contractor's license.

Moreover, on Slenk's tax returns for 1993, the backhoe was listed as the property of Slenk's Builders. This characterization permitted Slenk and his wife to expense the total cost of the backhoe. *See* 26 U.S.C. § 6065.

On January 14, 1994, Slenk obtained a loan from the Honolulu Fire Department Federal Credit Union ("Credit Union Loan") in an attempt to finance the previously purchased backhoe. It was this loan that gave rise to the present controversy. The loan agreement was signed by Slenk as an individual, rather than as Slenk's Builders, and identified the intended use for the loan as the purchase of "excavation equipment [and] other personal goods." Despite the loan agreement's reference to "other personal goods," it is undisputed that Slenk used the entire loan to finance the purchase of the backhoe.

Slenk subsequently failed to repay the Credit Union Loan, causing his account to be assigned to Transworld Systems, a national collection agency. Between June and September of 1997, Transworld sent seven collection letters to Slenk in his capacity as an individual, and called him and his wife at home on numerous occasions.

In response to Transworld's actions, Slenk filed the instant suit alleging that Transworld's collection practices violated: (1) the FDCPA, 15 U.S.C. §§ 1692–1692o; [1] (2) its Hawaii state law counterpart, the UDAP, Haw. Rev. Stat. § 443B; and (3) Haw. Rev. Stat. § 480, dealing with monopolies and restraints of trade. Transworld moved for, and was granted, summary

judgment by the district court on the ground that the Credit Union Loan was commercial in nature, and, as such, did not fall within the protective purview of these statutes.

## II

## DISCUSSION

### A. Standard of Review

 A grant of summary judgment is reviewed *de novo*. *See Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether (1) there are any genuine issues of material fact, and (2) whether the district court correctly applied the relevant substantive law. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

### B. The District Court Erroneously Concluded that No Genuine Issue of Material Fact Existed as to Whether the Credit Union Loan was a Consumer Debt

 The district court erred in concluding that no genuine issue of material fact existed as to whether Slenk's Credit Union Loan was a consumer debt for purposes of the FDCPA and the UDAP. The FDCPA precludes debt collectors from implementing unlawful debt collection tactics against consumers. "Consequently, the [FDCPA] applies to consumer debts and not business loans." *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992). The FDCPA defines a consumer debt as, "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the ... property ... which [is] the subject of the transaction [is] *primarily for personal, family, or household purposes* ...." 15 U.S.C. § 1692a(5) (emphasis added).

---

1. Because the applicability of the FDCPA in this case remains an open question, we decline to resolve the issue of whether Trans- world's initial letter to Slenk violated the FDCPA.

■ Both the UDAP and Hawaii's statutory prohibition on unfair trade practices implement a definition of consumer debt that parallels the definition used by the FDCPA. *See* HAW. REV. STAT. §§ 443B–1 (" 'Debt' means any obligation or alleged obligation of a consumer to pay money or other forms of payment arising out of a transaction in which the money, property, insurance, or services, which are the subject of the transaction, are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."); HAW. REV. STAT. § 480D–2 (" 'Consumer debt' means any debt of a natural person incurred primarily for personal, family, or household purposes."). Thus, the threshold issue in this case is whether Slenk has raised a genuine issue of material fact as to whether his Credit Union Loan was a consumer debt, as that phrase is defined by the FDCPA. We hold that he has.

■ We have found it necessary when classifying a loan to " 'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature.' " *Bloom*, 972 F.2d at 1068 (quoting *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir.1980)). In making this determination, we have elevated substance over form, holding that "[n]either the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry." *Id.* We must therefore "look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone." *Riviere, et al. v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir. 1999).

Slenk's use of the loan money is not in dispute. Slenk concedes that the Credit Union Loan was used exclusively to finance the backhoe. Thus, the sole determination we must make is whether the district court correctly found as a matter of law that Slenk purchased the backhoe for commercial use and not "primarily for personal, family, or household purposes." Viewing the transaction as a whole, we find that Slenk has raised a genuine issue of material fact as to whether the backhoe was purchased primarily for consumer purposes.

The district court relied upon numerous facts in concluding as a matter of law that the backhoe was purchased strictly for commercial purposes. First, the Invoice states that the backhoe was sold to "Slenk Bldrs." As a business, Slenk's Builders was charged a significantly lower sales tax than Slenk would have paid had he purchased the backhoe as an ordinary consumer. Second, the building permits and accompanying documentation for the construction of Slenk's house and driveway state that the work would be done by Slenk's Builders, rather than by Slenk as an individual. Third, the Slenks' 1993 tax returns characterized the backhoe as a business asset belonging to Slenk's Builders, thus enabling the Slenks to expense the backhoe's cost. While the foregoing facts militate against Slenk's position, they are not dispositive.

The record is replete with undisputed objective facts which, when viewed in the aggregate, create a genuine issue of material fact. First, the loan instrument itself connotes that the debt was consumer in nature, providing that the loan was secured for the purpose of purchasing "excavation equipment and *other* personal goods." (emphasis added). Second, Slenk used the backhoe to build his family home. There could not be a more quintessential personal, family, or household purpose. Third, Slenk has presented uncontroverted testimony that he never once used the backhoe for any other purpose, including in his capacity as the owner of Slenk's Builders. Fourth, while the purchase of a backhoe by the owner of a construction company for personal use does invoke suspicion, Slenk has presented uncontroverted evidence proving that Slenk's Builders was not even licensed to use a backhoe. Fifth, the fact that Slenk immediately sold the

backhoe upon completing his home illustrates that he was not harboring an ulterior motive to use the backhoe for business purposes in the future.

■ With all respect, the district court appears to have overlooked the foregoing facts in concluding that no genuine issue of material fact existed as to whether the Credit Union Loan constituted a consumer debt. By focusing exclusively on select documentary evidence, rather than looking to the facts illustrating the actual use to which the backhoe was put, the forest was lost for the trees. The undisputed evidence in the case at bar proves that the backhoe was used strictly for personal use, and was never used by Slenk's Builders. While this fact contradicts the representations made on the Invoice, Slenk's tax returns, and Slenk's building permit applications, it is not the province of the district court to weigh conflicting evidence for purposes of summary judgment. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

### C. Sole Proprietorship Debts Are Not Necessarily Consumer Debts

■ Slenk contends that any debt procured by a sole proprietor necessarily constitutes a consumer debt for purposes of the FDCPA, as stated by the court in *Sluys v. Hand*, 831 F.Supp. 321, 323 (S.D.N.Y.1993). Slenk's reliance on *Sluys* is misplaced. The opinion in *Sluys* has been sharply criticized—and rightly so—by courts and academic commentators due to its abandonment of the FDCPA's definition of a consumer debt. The United States District Court for the Western District of Oklahoma in *Beaton v. Reynolds, Ridings, Vogt and Morgan, P.L.L.C.*, 986 F.Supp. 1360 (W.D.Okla.1998), found the result in *Sluys* to be "plainly wrong," stating that "[t]o the extent *Sluys* stands for the proposition that the Act does not require proof [that a transaction was entered into primarily for personal, family, or household purposes], the decision is in error." *Id.* at 1362.

The foregoing sentiment has been echoed in legal publications, which suggest that "the [*Sluys*] court completely disregarded the statutory definition of 'debt.' For this reason, ... the case is not good law, and is contrary to the statutory language of the Act." Louis Rosenberg, *Complying With the Fair Debt Collection Practices Act*, 40–DEC Res Gestae 24, 25 n. 22 (1996). We agree. Therefore, because the holding in *Sluys* circumvents the statutory requirements for proving a consumer debt as required under the FDCPA, we deem it unworthy of credence.

### D. Transworld's Contact with Slenk at His Home Did Not Redefine the Nature of His Debt

■ Slenk asserts that even if the Credit Union Loan was originally commercial in nature, Transworld transformed the loan into a consumer debt by contacting him at home. Slenk is mistaken. Slenk bases his argument on the case of *Moore v. Principal Credit Corp.*, 1998 WL 378387, at *2 (N.D.Miss.1998), in which the court held, "[i]f the plaintiffs were not 'consumers' at the time of the purchase, then certainly they became 'consumers' for purposes of the Act once the telephone calls to their home began." The logic in *Moore* is antithetical to the tenets of the FDCPA. As one court noted in rejecting the holding in *Moore*, "if a communication to the debtor's home converted any commercial debt into an obligation under the FDCPA, it would be tantamount to an amendment of the clear intent of Congress." *Holman v. West Valley Collection Services, Inc.*, 60 F.Supp.2d 935, 936–37 (D.Minn.1999). We, too, refuse to ignore Congress's intent by defining a consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt. *See* 15 U.S.C. § 1692a(5). Accordingly, we decline Slenk's invitation to adopt the questionable precedent established in *Moore*.

## III

### CONCLUSION

For the reasons stated above, we RE-VERSE and REMAND the case to the district court for further proceedings.