**Gary BALLARD and Nancy Ballard, Plaintiffs,**

v.

**EQUIFAX CHECK SERVICES, INC., Defendant.**

**No. Civ.S–96–1532 FCD GGH.**

United States District Court, E.D. California.

Aug. 17, 2001.

Paul Arons, Law Offices of Paul Arons, Redding, CA, O. Randolph Bragg, III, Horwitz, Horwtitz & Assoc., Chicago, IL, for Plaintiff.

David L. Hartsell, Ross & Hardies, Chicago, IL, Audrey A. Millemann, Weintraub, Genshlea, Chediak & Sproul, Sacramento, CA, for Defendants.

### MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiff and class representative Gary Ballard [1] brings this action on behalf of himself and others who are similarly situated against defendant Equifax Check Services, Inc. ("ECS") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and

---

1. Gary Ballard is referred to herein as "plaintiff." This motion does not concern the individual claims of plaintiff Nancy Ballard.

the California Unfair Business Practices Act ("CUBPA"), Cal.Bus. & Prof.Code §§ 17200 *et seq.* This matter is before the court on plaintiff's motion for partial class-wide summary judgment. For the reasons set forth below, the motion is GRANTED.

## FACTUAL BACKGROUND

Defendant ECS is in the check authorization and warranty business. ECS enters into subscriber agreements with retail merchants who accept checks from their customers. Under the terms of these subscriber agreements, when a customer presents a check to the merchant, the merchant contacts ECS for authorization. ECS then consults its computer files to see if it has any pertinent information on the checkwriter and advises the merchant to either accept or decline the check. When a check authorized by ECS is dishonored, ECS purchases the check for full value, up to a certain dollar amount and initiates collection efforts on its own behalf. In addition to the amount of the unpaid check, ECS demands payment of a $20 service charge. ECS' collection efforts include a series of standardized collection letters. In some of its letters, ECS represents that the service charge is authorized under California law.

According to ECS, each of its subscriber agreements requires the merchant to post a sign advising checkwriters of the $20 service charge. For example, ECS' agreement with Reebok Factory Direct required Reebok to "display Equifax-supplied service-charge notices at the point-of-sale at each of its Locations ... so that they are clearly visible to all Checkwriters."

During the relevant time period, August 26, 1992 to December 31, 1996,[2] ECS sought to collect a $20 service charge from approximately 1.4 million California residents. Plaintiff contends that ECS' practice of sending letters demanding a $20 service charge and representing that the charge was authorized under California law violated the FDCPA and the CUBPA. By this motion, plaintiff seeks an order: (1) finding that ECS violated the FDCPA and CUBPA by sending letters demanding the service charge and representing that the service charge was permitted under California law; (2) finding that ECS is liable to pay actual damages to the class for violations of the FDCPA; (3) finding that ECS is liable to pay restitution to the class for violations of the CUBPA; (4) declaring that the service charge is unlawful under the FDCPA and CUBPA; (5) declaring that Cal .Civ.Code § 1671 prohibits ECS from attempting to collect its service charge; (6) declaring that ECS' demand for payment of a service charge is a demand for fees unauthorized by law in violation of 15 U .S.C. §§ 1692e(2), 1692e(10) and 1692f; and (7) permanently enjoining ECS from collecting a service

---

2. The statute of limitations under the FDCPA is one year. 15 U.S.C. § 1692e(f)(2). The statute of limitations under the CUBPA is four years. Cal.Bus. & Prof.Code § 17208. As of January 1, 1997, service charges of $25.00 to $35.00 were expressly permitted by statute for dishonored checks. Cal.Civ.Code § 1719(a)(1). This action was filed on August 26, 1996. Accordingly, the relevant time period is from August 26, 1992 (four years prior to the filing of the action) to December 31, 1996 (the last day service charges were *not* expressly authorized by statute). The class can be broken down into two groups. First, there are those class members from whom ECS attempted to collect the service charge during the period August 26, 1995 (one year before the filing of the instant action) through December 31, 1996 (after which time Cal.Civ. Code § 1719 expressly authorized the charges). Those class members have both a FDCPA and a CUBPA claim. Second, there are those class members from whom ECS attempted to collect the service charge during the period August 26, 1992 to August 25, 1995. Those class members only have a CUBPA claim.

charge on dishonored checks written before January 1, 1997 and from refusing to authorize checks because such charges have not been paid. Plaintiff does not, by this motion, seek an award of statutory damages, a determination of the total amount of actual damages under the FDCPA, or the total amount of restitution under the CUBPA.

## PROCEDURAL BACKGROUND

### 1. Partial Summary Judgment In Favor of Gary Ballard

On August 17, 1998, this court granted partial summary judgment in favor of plaintiff Gary Ballard *only*. The court rejected, as a matter of law, ECS' argument that California's Commercial Code provided a basis under which to collect the service charge.[3] The court further found that ECS failed to present evidence sufficient to create a triable issue of material as to whether Gary Ballard agreed to pay the service charge at the time he wrote the check. Mem. & Ord, filed Aug. 17, 1998.[4]

### 2. Class Certification

Several months later, on February 22, 1999, this court amended a prior order by Judge Garland E. Burrell, to whom this case was previously assigned, denying plaintiffs' motion for class certification, and certified this action as a class action. The court certified named plaintiff Gary Ballard as the representative and defined the class as follows:

All California consumers on whose claims the statute of limitations has not run who were sent, or will be sent during the pendency of this action, a letter by defendant ECS, demanding payment to ECS of a service charge for collecting a dishonored check written prior to January 1, 1997.

Mem. & Ord., filed Feb. 22, 1999. The court certified the issues of liability, declaratory relief and statutory damages under the FDCPA and injunctive relief and restitution under the CUBPA pursuant to Fed.R.Civ.P. 23(b)(2)[5] and certified the issue of actual damages pursuant to Rule 23(b)(3).[6]

### 3. Motion For Partial Class–Wide Summary Judgment And Motion For Reconsideration Of Class–Certification Order.

Thereafter, on August 16, 1999, plaintiff noticed the instant motion for partial class-wide summary judgment, relying in large part on this court's August 17, 1998 order. ECS opposed the motion and moved for reconsideration of the court's order certifying the class on the ground that the order violated the one-way intervention rule. More specifically, ECS argued that the court's August 17 order was a "decision on the merits," and thus, the court lacked the authority to thereafter certify the class. This court denied the motion for reconsideration, finding that its August 17 order was specific to Gary Ballard and

3. The court later denied a request by ECS to reconsider this finding based on the subsequent decision in *Tuttle v. Equifax Check,* 190 F.3d 9 (2d Cir.1999).

4. The court denied plaintiff Nancy Ballard's motion for summary judgment.

5. Certification under subdivision (b)(2) is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

6. Certification under subdivision (b)(3) is proper where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

the facts of his case, namely the lack of any evidence of an agreement between Gary Ballard, the merchant or ECS to pay the service charge. *See* Mem. & Ord., filed Feb. 8, 2000. With respect to plaintiff's motion for partial class-wide summary judgment, the court was concerned that ruling on that motion prior to providing notice to the class might run afoul of the one-way intervention rule. Accordingly, the court deferred ruling on plaintiff's motion for class-wide summary judgment and requested supplemental briefing on the consequences of ruling on the motion prior to notice being given to the class. *Id.*

### 4. Stay Of Proceedings

In the interim, on February 18, 2000, ECS filed a petition for permission to appeal the class certification order with the Ninth Circuit, and requested this court defer notifying the class and ruling on plaintiff's pending motion for partial class-wide summary judgment pending a decision on ECS' petition. Additionally, on February 24, 2000, ECS filed a "motion for 28 U.S.C. § 1292(b) finding and for stay pending appeal."[7] On March 23, 2000, this court certified the following issue for interlocutory appeal: whether ECS is precluded as a matter of law from arguing that its service charge was authorized as an "incidental damage" under California Commercial Code sections 2104, 2707, 2709 and 2710. The court further ordered the proceedings stayed pending a ruling by the Ninth Circuit on ECS' petitions.

### 5. Current Status

The Ninth Circuit denied both petitions on July 27, 2000, and this court set the matter for a status conference on September 22, 2000. At the court's request, the parties addressed plaintiff's pending motion for partial class-wide summary judgment, class notice, and settlement in their joint status conference statement. Following the status conference, on September 28, 2000, the court held that "notice must be provided to members of the (b)(3) class in accordance with Rule 23(c)(2) *prior* to the court ruling on plaintiff's pending motion for partial class-wide summary judgment." Mem. & Ord., filed Sep. 28, 2000. The court approved the contents of the proposed class notice on December 13, 2000. On April 24, 2001, plaintiff notified the court that the (b)(3) class had been notified, and the court set plaintiff's motion for class-wide summary judgment for hearing on July 13, 2001.

On May 1, 2001, ECS filed a notice of additional authority, alerting the court to, among other things, the case of *Slenk v. Transworld Systems, Inc.,* 236 F.3d 1072 (9th Cir.2001), which, according to ECS, addressed "the need to develop proper evidence of whether the debt(s) at issue are 'consumer debts' within the meaning of the [FDCPA]." Not. of Add'l Auth. at 1, filed May 1, 2001. Plaintiff filed an objection thereto. The court heard oral argument on July 13, 2001. By minute order dated July 13, 2001, the court requested supplemental briefing on the "*Slenk* issue." The parties filed supplemental briefs on July 27, 2001 in accordance with the court's order. Having carefully considered all of the pleadings filed in support of and in opposition to the instant motion, as well as the arguments of counsel, the court now disposes of the instant motion.

### STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the

---

**7.** Between February 25 and March 14, 2000, the parties filed supplemental briefing as re-

quired by the court's February 8, 2000 order.

pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the moving party does not bear the burden of proof at trial, it may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. 2548.

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The evidence presented by the parties must be admissible. Fed. R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 57 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## ANALYSIS

### 1. Liability

#### A. FDCPA

Plaintiff argues that ECS is liable to the class for attempting to collect the $20.00 service charge and for misrepresenting that the service charge was authorized under California law. 15 U.S.C. §§ 1692f & 1692e.

■ As a preliminary matter, ECS argues that plaintiff has failed to establish that the transactions at issue are consumer in nature, and thus, governed by the FDCPA.[8] It is well established that the FDCPA regulates the collection of consumer, as opposed to commercial, debt. *Bloom v. I.C. Sys., Inc.,* 972 F.2d 1067, 1068 (9th Cir.1992). Under the FDCPA, consumer debt is debt incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Relying on the Ninth Circuit's recent decision in *Slenk*

---

**8.** ECS did not challenge the nature of the debt in its opposition to the instant motion. Rather, ECS raised the issue in its notice of supplemental authority filed May 1, 2001. As set forth above, the court provided both parties with an opportunity to brief the issue following oral argument on July 13, 2001.

*v. Transworld Sys., Inc.*, 236 F.3d 1072 (9th Cir.2001), ECS contends that plaintiff cannot meet his burden of establishing that each class member's debt was incurred for a consumer purpose solely by reference to the form of the payment (personal check) and the identity of the merchant (retail).

ECS forgets that class members by definition are "consumers." Mem. & Ord. (defining class as "All California consumers . . . ."), filed Feb. 22, 1999. While the term "consumer," when considered in the abstract, does not necessarily mean an individual making a purchase for a personal purpose, the court must view the term in the context in which it is used—in an action brought under the FDCPA. Under the FDCPA, the term "consumer" means "any natural person obligated to pay . . . any obligation or alleged obligation arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(3), (5).[9] Thus, to the extent the court finds ECS is liable to the class, ECS' liability necessarily extends only to "natural persons obligated to pay . . . any obligation or alleged obligation arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."

While ECS may raise this issue in the damages phase of this litigation, the court is not persuaded that *Slenk* presents a significant obstacle. In *Slenk*, the plaintiff obtained a loan from his credit union to finance the purchase of backhoe used in the construction of his home. When the plaintiff failed to repay the loan, his account was assigned to the defendant for collection. Thereafter, the plaintiff sued the defendant, alleging that the defendant's collection practices violated the FDCPA. The district court granted summary judgment in the defendant's favor, finding as a matter of law that the loan was a commercial, as opposed to a consumer, debt. The district court relied on the following facts in concluding that the plaintiff had purchased the backhoe strictly for commercial purposes: the purchase invoice listed "Slenk Bldrs." as the purchaser; the construction permits for the plaintiff's home stated that the work would be done by Slenk Builders; and the plaintiff's tax returns listed the backhoe as a business asset. The Ninth Circuit reversed, finding that the "district court erred in concluding that no genuine issue of material fact existed as to whether the Slenk's Credit Union Loan was a consumer debt for purposes of the FDCPA. . . ." *Id.* at 1074. The Ninth Circuit found that the record contained facts that created a triable issue as to the nature of the transaction, including: the loan instrument indicated that the debt was consumer in nature; the plaintiff used the backhoe exclusively to build his family home; and Slenk Builders was not licensed to use a backhoe. The court explained:

> We have found it necessary when classifying a loan to " 'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature.' " *Bloom*, 972 F.2d at 1068 (quoting *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir.

9. Under the FDCPA, "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt," and debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(3), (5).

1980)). In making this determination, we have elevated substance over form, holding that "[n]either the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry." *Id.* We must therefore "look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone." *Riviere, et al. v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir.1999).

*Id.* at 1075.

According to ECS, *Slenk* requires this court to examine each of the 1.4 million transactions at issue to ascertain each checkwriter's *purpose* in making the purchase. According to ECS, the court cannot rely solely on the form on the instrument (personal check) and identify of the merchant (retail) to make this determination. Under ECS' interpretation, it is difficult to imagine any class being certified under the FDCPA, as individual issues of proof would likely dominate any such action. Such an interpretation stands in stark contrast to the many cases in which classes have been certified to bring such a claim.

As ECS points out, there are instances where individuals purchase goods from retail outlets with personal checks for commercial purposes. For example, as ECS offered during oral argument, Barry Bonds, San Francisco Giants' outfielder, may purchase a baseball glove (presumably an outfielder's glove) from a sporting goods store with a personal check. Despite the fact he used a personal check to purchase the glove from a retail outlet, his purchase may have been for a commercial purpose. ECS does not dispute that the above scenario illustrates an exception to the general rule that purchases made by individuals at retail outlets are made for a consumer purpose or that the vast majority of individuals who purchase baseball gloves from retail outlets with personal checks do so for consumer purposes. Nevertheless, ECS urges this court to use the exception to the general rule as a basis for defeating class status. As set forth below, the court finds the better rule, given the indicia of consumer purpose present in this case, is to shift the burden to ECS to demonstrate that the transactions were not consumer transactions.

While not binding on this court, a number of district courts have held that proof that the dishonored check was a personal check creates a rebuttable presumption that the transaction was consumer in nature. *See, e.g., Ditty v. Checkrite, Ltd.*, 1998 WL 663357 *2 (D.Ut. Aug.13, 1998) (holding that "the use of a personal check, as identified on the defendants' computer system, creates a rebuttable presumption that the debt was consumer in nature and is sufficient to make out plaintiffs' prima facie case" as required for class certification); *Newman v. Checkrite California, Inc.*, 912 F.Supp. 1354, 1364 n. 7 (E.D.Cal. 1995) ("collection of dishonored checks written to retailers falls within purview of FDCPA"); *see also Wells v. McDonough*, 188 F.R.D. 277, 278–79 (N.D.Ill. Jun.16, 1999) (rejecting argument identical to that advanced by ECS); *Irwin v. Mascott*, 96 F.Supp.2d 968, 972 (N.D.Cal. Mar.24, 1999) ("A dishonored check written on a personal checking account is prima facie evidence that the check was written for personal purposes.").[10]

Here, plaintiff has produced evidence that ECS provides check authorization and guarantee services, primarily for retail stores and categorizes checks as either

---

**10.** The court respectfully disagrees with the district court's decision in *Lewis v. Riddle*, 1998 U.S.Dist. LEXIS 20465 (W.D.La. Nov. 18, 1998), cited by ECS. Indeed, even the *Lewis* court recognized that "the published decisions may indicate that it is in the minority" in rejecting the rebuttable presumption analysis. *Id.* at *18.

"personal" or "business" in its computerized database. This evidence is sufficient to raise a rebuttable presumption that the underlying transactions were personal in nature. ECS may, however, rebut this evidence on an individual basis in the damages phase of this action. *See Wells*, 188 F.R.D. at 279.

Having found that the consumer nature of the transactions is not a bar to ruling on the instant motion, the court must consider whether ECS' conduct violated the FDCPA. Under the FDCPA, ECS was prohibited from collecting or attempting to collect its $20.00 service charge unless such amount (1) was expressly authorized by the agreement creating the debt, or (2) permitted by law. 15 U.S.C. § 1692f(1). This court has already found that the service charge was not permitted by law. *See* Mem. & Ord., filed Aug. 17, 1998; Mem. & Ord., filed Feb. 8, 2000.[11] Thus, the only remaining issue is whether the service charge was expressly authorized by the agreement creating the debt.

■ Before, however, the court considers whether the service charge was expressly authorized, it must consider whether it was prohibited under California law.

■ Even if class members agreed to pay the service charge, as ECS seeks to establish, ECS was prohibited from collecting or attempting to collect the same if the charge was prohibited by state law. *See* Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. at 50,108;[12] *see also Pollice v. Nat'l Tax Funding L.P.*, 225 F.3d 379, 408 (3d Cir. 2000) ("[D]efendants presumably have violated section 1692f(1) regardless of the presence of any agreement authorizing the rates of interest and penalties, because state law specifically prohibits charging interest in excess of ten percent on the assigned claims."); *Tuttle*, 190 F.3d at 13 ("If state law expressly prohibits service charges, a service charge cannot be imposed even if the contract allows it[.]"); *Irwin*, 96 F.Supp.2d at 976 ("[Even if there were evidence of an express agreement to pay the service charge, the service charge agreement would be a void liquidated damages provision under California Civil Code § 1671]."). Plaintiff contends that any agreement to pay the service charge would be invalid under Cal.Civ. Code § 1671 as a void liquidated damages provision.

■ Whether any agreement to pay the service charge is a void liquidated damages provision is a matter to be decided by the court. *Irwin*, 96 F.Supp.2d at 976 (citing *Beasley v. Wells Fargo Bank*, 235 Cal. App.3d 1383, 1392–1393, 1 Cal.Rptr.2d 446(1991)). Moreover, ECS bears the burden of proving the service charge is valid. *Irwin*, 96 F.Supp.2d at 976 (citing *Garrett v. Coast and Southern Fed. Sav. and Loan Ass'n*, 9 Cal.3d 731, 738, 108 Cal.Rptr. 845, 511 P.2d 1197 (1973)).

■ In as much as the service charge is assessed only upon a check being dishon-

---

**11.** The court has reviewed the Eighth Circuit's decision in *Freyermuth v. Credit Bureau Svs.*, 248 F.3d 767 (8th Cir.2001) and respectfully declines to follow the same for the reasons set forth in its February 8, 2000 order. *See* Mem. & Ord., filed Feb. 8, 2000.

**12.** The Staff Commentary provides in pertinent part:

A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt *and the charge is not prohibited by state law,* or (b) the contract is silent but the charge is otherwise expressly permitted by state law. *Conversely, a debt collector may not collect an additional amount if either (a) state law expressly prohibits collection of the amount,* or (b) the contract does not provide for collection of the amount and state law is silent.

*Id.* (emphasis added).

ored, it is a liquidated damage and subject to the requirements of § 1671. *See Garrett*, 9 Cal.3d at 738, 108 Cal.Rptr. 845, 511 P.2d 1197 (holding that increased interest charged assessed only upon default must meet the requirements of § 1671).[13]

▆▆▆ Pursuant to subdivision (d) of section 1671, a liquidated damages provision in a consumer contract is void unless it was "impracticable or extremely difficult to fix the actual damage." *Hitz v. First Interstate Bank*, 38 Cal.App.4th 274, 288, 44 Cal.Rptr.2d 890 (1995) (quoting Cal.Civ. Code § 1671(d)).[14] Moreover, "the amount of liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.'" *Hitz*, 38 Cal.App.4th at 288, 44 Cal.Rptr.2d 890 (quoting *Garrett*, 9 Cal.3d at 739, 108 Cal.Rptr. 845, 511 P.2d 1197). "Absent either of these elements, a liquidated damages provision is void...." *Hitz*, 38 Cal.App.4th at 288, 44 Cal.Rptr.2d 890. "The validity of the liquidated damages clause is determined by the circumstances existing when the fee provisions are inserted into an agreement, and not by subsequent events." *Irwin*, 96 F.Supp.2d at 977 (citing *Hitz*, 38 Cal.App.4th at 288, 44 Cal. Rptr.2d 890). Accordingly, "[t]he parties' reasonable endeavor to estimate the loss

must precede the setting of fees. Cost analyses or studies made subsequent to the agreements are not relevant to the validity of the fees." *Irwin*, 96 F.Supp.2d at 977 (citing *Hitz*, 38 Cal.App.4th at 291– 292, 44 Cal.Rptr.2d 890).

The only evidence presented by ECS that it undertook to estimate its costs is a 1995 Cost Analysis which estimates that the average cost of collection "per each service charge recovered" in 1995 was $20.31. *See* Equifax Check Services Collection Costs Per Service Charge Collected With Data Processing & Systems & Programming Costs ("1995 Cost Analysis"), attached as Ex. D to Hartsell Decl. ECS further represents in its opposition to plaintiff's motion, without any supporting evidence, that it performed a similar type of analysis annually "since at least 1992." Opp'n at 15. Unsupported assertions made in moving papers are not evidence which the court may consider. *See Falls Riverway Realty*, 754 F.2d at 57; *Thornhill Publishing*, 594 F.2d at 738.

ECS' service charge is also unlawful because ECS apportioned all of its collection expenses among the accounts it successfully collected. *Bondanza v. Peninsula Hosp. & Med. Ctr.*, 23 Cal.3d 260, 268, 152 Cal.Rptr. 446, 590 P.2d 22 (1979).[15] In *Bondanza*, the defendants claimed that:

---

13. Moreover, while ECS seeks to rely on posted signs setting forth the circumstances under which a service charge would be imposed as evidence that class members "expressly" agreed to pay the same, ECS argues that the service charge does not constitute a liquidated damage because "[n]either ECS nor the merchant 'negotiated' with the check writer to arrive at the $20 figure." ECS cannot have it both ways. The checkwriter either agreed to pay a $20 service charge or they did not. If the checkwriter so agreed, which they must have in order for it to be "expressly authorized," then it constitutes a liquidated damage.

14. Subdivision (d) provides: "[A] provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." Cal .Civ.Code § 1671(d). Like the FDCPA, subsection (d) applies only to consumer contracts to purchase goods and services. *Irwin*, 186 F.R.D. at 575; Cal.Civ.Code § 1671(c). As set forth above, the "contracts" at issue are, by virtue of the class definition, consumer contracts.

15. The court acknowledges that ECS need not

even though the charge may not represent the actual cost of collecting the particular account it is nevertheless reasonable because in order to stay in business a collection agency must apportion its overall expenses among the accounts that it successfully collects, so as to reimburse it for expenses incurred in pursuing accounts that prove to be uncollectible.

*Id.* at 268, 152 Cal.Rptr. 446, 590 P.2d 22. In rejecting the defendants' assertion, the court explained that "the hospital is free to assign plaintiffs' obligations to a collection agency, and may pay the agency a fee for that service agreed upon between them; *but under the authorities cited herein, plaintiffs cannot lawfully be required to guarantee the economic well-being of the agency." Id.* at 269, 152 Cal.Rptr. 446, 590 P.2d 22 (emphasis added). The same is true here.

"In setting its service charge at $20, ECS looks at several factors," including the average cost of collection per service charge recovered, which it estimated at $20.31 in 1995. Opp'n at 15. ECS arrived at this figure by "look[ing] at the components of its operations and determin[ing] what percentage of that component was attributable to the collection process." *Id.* The components included: collections, claims processing, claims accounting, loss prevention, consumer affairs (salaries, postage, phone expense), customer service, major account services, accounts receivable (salaries, phone expense), data processing, S & P mainframe, financial services administration, and check divisional

administration. 1995 Cost Analysis, attached as Ex. D to Hartsell Decl. ECS allocated 100% of its expenses for collections, claims processing and claims accounting to the "collection process," and between 5% and 50% of its remaining components to the same. ECS next calculated the average cost of collection per each service charge recovered.

During oral argument on September 17, 1999, ECS's counsel readily acknowledged that the individuals who pay the service charge are paying the collection costs for those individuals whose checks remain outstanding. For example, Gary Ballard's check cleared immediately upon redeposit; yet he was assessed a $20 service charge. As the court held in *Bondanza,* class members such as Gary Ballard cannot be required to subsidize ECS' collection efforts.

■ Accordingly, ECS failed to meets its burden of proving its service charges' validity. *See Hitz,* 38 Cal.App.4th at 291–292, 44 Cal.Rptr.2d 890. *Garrett,* 9 Cal.3d at 738, 108 Cal.Rptr. 845, 511 P.2d 1197; Cal.Civ.Code § 1671.

ECS correctly argues that even if the service charge is a void liquidated damage, it is still entitled to recover its actual damages. *Garrett,* 9 Cal.3d at 731, 108 Cal.Rptr. 845, 511 P.2d 1197. In *Garrett,* the California Supreme Court stated:

We do not hold herein that merely because the late charge provision is void and thus cannot be used in determining the lender's damages, the borrower escapes unscathed. *He remains liable for*

---

prove the actual damages it incurred in each individual case "where it is established that the measure of actual damages would be a comparatively small amount and that it would be economically impracticable in each instance of a default to require a lender to prove to the satisfaction of the borrower the actual damages by accounting procedures." *Garrett,* 9 Cal.3d at 742, 108 Cal.Rptr. 845,

511 P.2d 1197. Rather, assuming the impracticability test were met, the court would "give effect to a liquidated damages provision resulting from the reasonable endeavors of the parties to fix a fair compensation." *Id.* As set forth, above, however, ECS failed to create a triable issue of material fact as to whether such reasonable endeavors were made.

*the actual damages resulting from his default.*

*Id.* (emphasis added). ECS' right to recover its actual damages does not prevent this court from entering summary judgment in plaintiff's favor as to liability. ECS may raise the issue of its actual damages in the damages phase of this litigation.[16]

Because the service charge is not authorized under California law, but rather, is a void liquidated damage, ECS violated 15 U.S.C. § 1692f by demanding payment of the same.

██  The FDCPA also prohibits:

The false representation of . . . the character, amount, or legal status of any debt, [and][t]he use of any false representation or deceptive means to collect or attempt to collect any debt.

15 U.S.C. § 1692e(2)(A) & (10). ECS violated 15 U.S.C. § 1692e by representing that the service charge was authorized under California law.

### B. CUBPA

██  The CUBPA prohibits "unfair competition" which is defined as "any unlawful, unfair or fraudulent business act or practice. . . ." Cal.Bus. & Prof.Code § 17200. The Legislature intended this "sweeping language" to include " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553,

560, 71 Cal.Rptr.2d 731, 950 P.2d 1086 (1998) (quoting *Bank of the West v. Sup. Ct.*, 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)). "When determining whether a practice is 'unlawful,' section 17200 'borrows' violations of other laws, and makes them independently actionable under the [CUBPA]." *AICCO, Inc. v. Ins. Co. of North Am.*, 90 Cal. App.4th 579, 109 Cal.Rptr.2d 359, 2001 WL 767884 (July 10, 2001) (citing *Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999)). "Virtually any law-federal, state or local-can serve as a predicate" for a CUBPA claim, "unless the defendant is privileged, immunized by another statute, or the predicate statute expressly bars its enforcement" under the CUBPA. *Stevens v. Sup. Ct.*, 75 Cal.App.4th 594, 602, 89 Cal. Rptr.2d 370 (1999). ECS' deceptive practices described above, which violate the FDCPA, also violate the CUBPA. *See Irwin*, 112 F.Supp.2d at 955.

### 2. Damages & Restitution[17]

██  For its violations of the FDCPA, ECS is liable for actual damages consisting of foreseeable out-of-pocket expenses incurred by checkwriters in responding to ECS' demands, including the amount which ECS collected above the face amount of each check, plus pre-judgment interest, for all payments demanded or made after August 25, 1995. 15 U.S.C. § 1692(k)(a)(1); *see also Irwin*, 112 F.Supp.2d at 955.[18]

---

**16.** ECS suggests that actual damages will have to be calculated on a case by case basis, thus, making class treatment inappropriate. The court is not convinced. As plaintiff's counsel explained during oral argument on July 13, 2001, there are ways to categorize ECS' collection efforts and avoid individual questions of damages. For example, the average cost of a collection letter and/or phone call is known to ECS, and ECS has records of the phone calls made and letters sent. Thus, its actual damages could be calculated by

multiplying the number of letters sent and/or calls made by the cost of the same.

**17.** ECS did not address the issues of damages, restitution, declaratory or injunctive relief in its opposition.

**18.** Plaintiff does not seek a ruling on statutory damages under 15 U.S.C. § 1692k(a)(2)(B) at this time. Plf.Mem. of P & A at 4 n. 3, filed Aug. 16, 1999.

■ For its violations of the CUBPA, ECS is liable to class members who actually paid a service charge and must pay restitution of the amount paid as a service charge, plus pre-judgment interest, for all payments demanded or made after August 25, 1992. *See Irwin,* 112 F.Supp.2d at 955–56 (citing *Bank of the West,* 2 Cal.4th at 1267, 10 Cal.Rptr.2d 538, 833 P.2d 545; Cal.Civ.Code § 3287).[19]

### 3. Declaratory Relief

■ Declaratory relief is appropriate when: (1) the judgment will serve a useful purpose in clarifying and setting the legal relations in issue; and (2) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Gammon v. GC Svs. Ltd. P'ship,* 162 F.R.D. 313, 320 (N.D.Ill.1995) (citing E. Borchard, *Declaratory Judgments* 299 (2d ed.1941)); *see also Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir. 1986).

Class members in this case are entitled to a judgment declaring that ECS' practices of demanding a service charge and representing that said charge was authorized under California law violate the FDCPA and CUBPA as follows: (1) ECS' service charge on dishonored checks is unlawful under the FDCPA and the CUBPA because it apportioned all of its collection expenses among the accounts it successfully collected.; (2) ECS' service charge is unlawful under the FDCPA and the CUBPA because it does not represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained; (3) California Civil Code § 1671 prohibits ECS from collecting or from attempting to collect its service charge on consumer accounts arising from dishonored checks

which were written prior to January 1, 1997; and (4) pursuant to California and federal law, ECS' demand for payment of a service charge on checks which were written prior to January 1, 1997 is a demand for fees unauthorized by law, which violates the FDCPA.

### 4. Injunctive Relief

■ The CUBPA provides for injunctive relief as a remedy for violations of law prohibiting unfair and anticompetitive business practices. Cal.Bus. & Prof.Code § 17200; *Bondanza,* 23 Cal.3d at 263, 152 Cal.Rptr. 446, 590 P.2d 22. "[ECS'] violations of the FDCPA fall into this category, since one of the purposes of the FDCPA is to protect the debt collectors who follow the law from those who do not." *Irwin,* 112 F.Supp.2d at 964. For good cause appearing, ECS and its subsidiaries, principals, officers, agents, employees, and successors and assigns are hereby permanently enjoined from (1) attempting to collect or collecting a service charge of any amount on accounts arising from dishonored checks written prior to January 1, 1997 by California consumers, and (2) refusing to authorize a check because a service charge on a dishonored check written prior to January 1, 1997 has not been paid.

### CONCLUSION

Plaintiff's motion for partial class-wide summary judgment is GRANTED in accordance with the above.

IT IS SO ORDERED.

---

**19.** The class members' remedies under the CUBPA are limited to restitution and injunctive relief. *MAI Sys. Corp. v. UIPS,* 856

F.Supp. 538, 541 (N.D.Cal.1994) (citing *Indus. Indem. Co. v. Sup. Ct. .,* 209 Cal.App.3d 1093, 257 Cal.Rptr. 655 (1989)).