Jerome SIROTE, Plaintiff,

v.

BBVA COMPASS BANK, Amy L. Shehan, and Lisa D. Williams, Defendants.

Civil Action No. CV–10–S–2698–NE.

United States District Court, N.D. Alabama, Northeastern Division.

Dec. 29, 2010.

1214

Mitchell John Howie, S. Mitchell Howie, Law Office of Mitchell J. Howie, Huntsville, AL, for Plaintiff.

A. Kelly Brennan, Adam Kent Israel, Balch & Bingham, LLP, Richard F. Ogle, William L. Thuston, Jr., Christian Small LLP, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

C. LYNWOOD SMITH, District Judge.

Plaintiff, Jerome Sirote, filed this case on October 5, 2010, against defendants BBVA Compass Bank ("Compass" or "Compass Bank"), Amy L. Shehan ("Shehan"), and Lisa D. Williams ("Williams"). The individual defendants are either employees or former employees of Compass. Plaintiff's original complaint asserted claims for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., as well as state law claims for breach of contract, breach of fiduciary duty, fraud, and deceit.[1]

Defendants have moved to dismiss plaintiff's original complaint for failure to state a claim upon which relief can be granted.[2] Plaintiff responded to the motions to dismiss,[3] and also moved for leave to amend his complaint to cure some of the deficiencies alleged in the motions to dismiss.[4] Plaintiff attached a proposed amended complaint to his motion for leave to amend. Defendants oppose plaintiff's motion for leave to amend, asserting that any amendment would be futile because, even as amended, plaintiff's complaint still would fail to state a claim upon which relief could be granted.[5] Plaintiff then filed a motion

1. Doc. no. 1 (Complaint).

2. Doc. nos. 8 and 10. First, defendants Compass and Shehan jointly moved to dismiss all of plaintiffs claims against them. Doc. no. 8. Then, defendant Williams moved to dismiss all of plaintiff's claims against her, and adopted the arguments asserted in the motion to dismiss filed by the other defendants, in addition to arguing lack of subject matter jurisdiction and insufficiency of service of process. Doc. no. 10.

3. Doc. no. 15.

4. Doc. no. 14.

5. See doc. no. 18 ("Memorandum in Opposition to Plaintiff's Motion for Leave to Amend, or Alternatively, Motion to Dismiss Plaintiff's First Amended Complaint," filed by defendants Compass and Shehan) & doc. no 19 ("Position Statement of Defendant Lisa D. Williams in Opposition to Plaintiff's Motion for Leave to Amend").

to exclude Exhibits C, D, and E to defendants' response to plaintiff's motion for leave to amend.[6] Defendants' motions to dismiss, plaintiff's motion for leave to amend, and plaintiff's motion to strike defendants' exhibits are presently before the court.

## I. STANDARDS OF REVIEW

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).[7] This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations omitted). The Supreme Court elaborated this standard in its *Iqbal* opinion, as follows:

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S. at 555, 127

S.Ct. at 1965]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*,

---

6. Doc. no. 20.

7. In full text, Rule 12(b) provides that:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
(1) lack of subject-matter jurisdiction;
(2) lack of personal jurisdiction;
(3) improper venue;
(4) insufficient process;
(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and
(7) failure to join a party under Rule 19.
A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.
Fed.R.Civ.P. 12(b).

at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second,* only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *[Iqbal v. Hasty*], 490 F.3d [143], at 157–158 [ (2d Cir.2007) ]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal,* 556 U.S. at 679, 129 S.Ct. at 1949–50 (emphasis added).

### B. Motion for Leave to Amend Complaint

■ Federal Rule of Civil Procedure 15 provides, in pertinent part, that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R.Civ.P. 15(a)(2). The Eleventh Circuit has held that a complaint generally may not be dismissed for failure to state a claim without notice to the plaintiff and an opportunity to respond. *See Jefferson Fourteenth Associates v. Wometco de Puerto Rico, Inc.,* 695 F.2d 524, 526 (11th Cir. 1983); *see also, e.g., Welch v. Laney,* 57 F.3d 1004, 1009 (11th Cir.1995) ("Where a more carefully drafted complaint might state a claim upon which relief could be granted, the district court should allow the plaintiff [an opportunity] to amend the complaint rather than dismiss it.") (citing *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991) ("Where a more carefully drafted complaint might state a claim, a plaintiff *must be given at least one chance to amend* the complaint before the district court dismisses the action with prejudice.") (emphasis supplied)). Even so, the court may refuse the amendment and dismiss the complaint if amendment would be futile due to legal or factual inadequacies in the pleading, or if it is "patently obvious" that the plaintiff could not prevail. *Byrne v. Nezhat,* 261 F.3d 1075, 1127 n. 99 (11th Cir.2001) (discussing a Rule 12(c) motion); *see also Burger King Corp. v. Weaver,* 169 F.3d 1310, 1319 (11th Cir.1999) (futility is an adequate basis for denying leave to amend).

### II. ALLEGATIONS OF PLAINTIFF'S PROPOSED AMENDED COMPLAINT[8]

In his amended complaint, plaintiff conceded the dismissal of his claim under the

---

8. It is appropriate to consider the allegations of plaintiff's proposed amended complaint, not his original complaint, because defen-

dants have argued that, even if the proposed amendment were allowed, the complaint still would be due to be dismissed.

Fair Debt Collection Practices Act.[9] Therefore, only his claims under the federal Truth in Lending Act, the federal Real Estate Settlement Procedures Act, as well as his claims for breach of contract, breach of fiduciary duty, fraud, and deceit under Alabama law, remain under consideration.

Plaintiff, Jerome Sirote, has been a customer of Compass Bank since 1976.[10] On March 21, 2003, his signature was, "without his knowledge, consent or *presence*, forged on a note and Deed of Trust." [11] Defendant Lisa D. Williams, an employee of Compass Bank, notarized the forged signature on the Deed of Trust, despite the fact that the signature did not resemble plaintiff's actual signature, a sample of which was on file at the bank.[12] On July 19, 2006, plaintiff's signature

> was again forged on A Modification of Deed of Trust, without his knowledge, consent or *presence*, and notarized as his actual signature by yet another [Compass] employee, agent or designee DEFENDANT AMY L. SHEHAN, even though the forged signature bore absolutely no resemblance to Mr. Sirote's actual signature which the bank had on file at the time.[13]

Compass filed the forged Deeds of Trust in Giles County, Tennessee, which resulted in a lien being placed on plaintiff's residence. Plaintiff did not discover the lien until 2010, when he attempted to sell his residence. In order to effect the sale, on May 14, 2010, plaintiff was required to pay the principal balance of $92,028.76, plus interest in the amount of $11,131.73 and late charges in the amount of $1,040.78.[14]

## III. DISCUSSION

### A. Truth in Lending Act Claim

To support his Truth in Lending Act claim, plaintiff alleges:

20. Mr. Sirote's right to relief under count three, the Truth in Lending Act, arises from the failure of the Defendant, BBVA COMPASS bank, to make required disclosures to him for loans fraudulently made in his name on the above named Deeds of Trust and subsequent modification. Mr. Sirote was required to pay interest, penalties and principal on loans that he did not authorize or sign for. The Defendant made no disclosures to Mr. Sirote on any of these loans or extensions of credit which were the result of the Defendants' intentionally or negligently failing to detect the forgery of his signature on the Deed of Trust and other loan documents' misrepresentation and failure to disclose material facts [sic].

21. Defendant, BBVA COMPASS BANK failed to give Jerome Sirote any timely disclosure of the terms of the loans in accordance with 15 U.S.C. 2601 and Federal Reserve Board Reg. Z, 12 C.F.R. Section 226, promulgated pursuant thereto. Mr. Sirote did not know the true extent of the loan until he sold his property in May 2010.

WHEREFORE, Plaintiff, JEROME SIROTE, respectfully prays that this Court: Award damages to be established at trial pursuant to 15 U.S.C. section 1640(a)(1); Award statutory damages in the amount of twice the finance charges not to exceed $1,000 in

---

**9.** *See* Amended Complaint, appended to doc. no. 14. *See also* doc. no. 15 (Plaintiff's Response to Defendants' Motion to Dismiss), at 29 (*"THE PLAINTIFF AGREES TO STRIKE THE FDCPA CLAIM."*) (emphasis in original).

**10.** Amended Complaint, at ¶ 6.

**11.** *Id.* at ¶ 9 (emphasis in original).

**12.** *Id.* at ¶ 10.

**13.** *Id.* at ¶ 11 (emphasis in original).

**14.** *Id.* at ¶¶ 15–16.

accordance with 15 U.S.C. Section 1640(a)(2); Award JEROME SIROTE costs and reasonable attorneys fees in accordance with 15 U.S.C. Section 1640[.][15]

Defendants assert that plaintiff does not have standing to pursue his TILA claim because he disputes that he actually obtained a loan from Compass Bank. Essentially, defendants argue that plaintiff has set himself a trap. Plaintiff alleges that the Deeds of Trust executed in 2003 and 2006 were forgeries, so he never actually intended to borrow any money from Compass. The catch is that, if plaintiff never actually engaged in a loan transaction with Compass, he cannot assert a claim under the TILA. Notably, plaintiff does not respond to this argument in his brief.

■ The purpose of the TILA is to promote "the informed use of credit." 15 U.S.C. § 1601(a). The TILA serves that purpose by assuring "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Id.* The TILA also "provides a 'civil cause of action *by a consumer against a creditor* who fails to make the required disclosures.'" *Johnson v. Ocwen Loan Servicing,* 374 Fed.Appx. 868, 874 (11th Cir.2010) (quoting *Tower v. Moss,* 625 F.2d 1161 (5th Cir.1980)) (emphasis supplied).[16] The Eleventh Circuit has held that a subsequent purchaser of a piece of property did not have standing to assert a TILA claim for the simple reason that *she* was not a party to the original loan transaction. *Johnson,* 374 Fed.Appx. at 874

("Accordingly, the district court did not err in finding that, because Johnson was not a debtor or 'consumer' of the loan, she was not protected by the statutes she cited [including the TILA] and, therefore, lacked standing."). The United States District Court for the District of New Jersey has stated the same general principle with slightly different words: "in order to show an injury under the TILA ..., 'Plaintiff must have been doing business with Defendant.'" *Johnson v. Novastar Mortgage, Inc.,* 698 F.Supp.2d 463, 468 (D.N.J.2010) (citing *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 692 (E.D.Pa.1973); *Talley v. Deutsche Bank Trust Co.,* No. 07–4984, 2008 WL 4606302, at *2 (D.N.J. Oct. 15, 2008)). Even more directly on point, in a case where the plaintiff alleged that she had never signed any loan documents, and that the documents in the lender's possession were forgeries, the district court held that the plaintiff did not have standing as a "consumer" to bring an action against a "creditor" under the TILA for failure to make proper disclosures. *Talley,* 2008 WL 4606302, at *2 ("Because Plaintiff has not demonstrated that she entered into any credit transaction with Defendant, Defendant cannot be held liable to plaintiff under the terms of the TILA.").

■ Based on the reasoning set forth in the *Johnson* decision of the Eleventh Circuit, as well as the persuasive rationales of the *Johnson* and *Talley* decisions from the United States District Court for the District of New Jersey, this court concludes that, because plaintiff claims he never entered into a loan transaction with Compass Bank, he does not have standing to assert

**15.** Amended Complaint, at ¶¶ 20–21 & *ad damnum* clause.

**16.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

a claim against Compass under the TILA for failure to make all the required disclosures associated with a loan transaction. Accordingly, plaintiff's TILA claim is due to be dismissed with prejudice.

## B. Real Estate Settlement Procedures Act Claim

For his claim under the Real Estate Settlement Procedures Act, plaintiff alleges:

22. The Defendant, BBVA COMPASS BANK was mailed a letter on or about December 10, 2009, instructing the Defendant, BBVA COMPASS BANK to deliver copies of all loan documents and accounts to Ben Cumbie and attorney, R. Wayne Wolfe, which qualifies as a written request from the borrower (or an agent for the borrower) for information relating to the servicing of a loan in accordance with 12 USC 2605(e).

23. Said letter, [sic] was a qualified written request that enabled the servicer BBVA COMPASS BANK to identify, [sic] the name and account of the borrower in accordance with 12 USC 2605(e) because the letter was a response to a claim on his account. Mr. Sirote did not have a loan number because no part of the loan was disclosed to him as required by law. Defendant has his name and address on the letter and the loan apparently originated from the bank Mr. Sirote had trusted since 1976. The letter provided sufficient detail to BBVA COMPASS BANK regarding information sought by Mr. Sirote by stating that he wanted copies of all loan documents, deeds of trust and all account statements and an accounting of any arrearage.

24. Defendant, BBVA COMPASS BANK, failed to provide a written response within 20 days and failed to make appropriate corrections in the account of

Mr. Sirote, conduct an investigation, or provide the borrower, Mr. Sirote, with an explanation or clarification that included a statement of the reasons the account claimed was correct as determined by BBVA COMPASS BANK or the name and telephone number of an individual who could provide assistance to the borrower within 60 days as required by 12 USC 2605(e)(2).

25. In accordance with 12 USC 2605(f) Defendant, BBVA COMPASS BANK is liable to the Mr. Sirote [sic] for any actual damages as a result of the failure and any additional damages in an amount not to exceed $1,000 and any attorney's fees incurred in connection with this action.[17]

Defendants argue that plaintiff's RESPA claim, even as it is alleged in plaintiff's proposed Amended Complaint, fails to state a claim upon which relief can be granted because plaintiff did not make a "qualified written request" related to the servicing of a loan, as required by the statute.

The relevant provision of RESPA states:

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information *relating to the servicing of such loan,* the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken with in such period.

12 U.S.C. § 2605(e)(1)(A) (emphasis supplied). The servicer is required to take action in response to a qualified written request within sixty days of receiving the request. *See* 12 U.S.C. § 2605(e)(2). The statutory definitions of three terms used in

---

17. *Id.* at ¶¶ 22–25.

§ 2605(e) are relevant to defendants' arguments. First, a "servicer" is defined as "the person responsible for the servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). "Servicing" is defined

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 U.S.C.A. § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). Finally, a "qualified written request" is

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> > (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> >
> > (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

 The court agrees with defendants that the letter plaintiff sent them on December 10, 2009, did not constitute a "qualified written request" under RESPA. That letter was addressed to "Compass Bank, ATTN: Amy Hovis, 114 Governors Drive, Huntsville, Alabama 35801." The full text of the letter is as follows:

> Dear Ms. Hovis:
>
> This is to direct you and Compass Bank to provide Ben Cumbie and my attorney, R. Wayne Wolfe, the following documents, to-wit:

> 1. Copies of any and all checking account statements, savings account statements, loan account statements, money market accounts, investment account statements and any other financial statements of accounts that have been in my name from the inception of such account down through and including the present date.

> 2. Copies of any and all loan documents, notes, deeds of trust, mortgages, disclosure documents, disclosure statements, commitments or the like pertaining to loans in my name or bearing my alleged signature for a period of time that any such loans may have been in existence down through and including the present date.

> 3. Copies of any and all documents, account statements, correspondence, memos, e-mails, memorandums [sic] or the like concerning investment accounts in my name including copies of checks, wire transfers or other documents pertaining to disbursement from such accounts, from the date of their inception down through and including the present date.

> 4. Copies of any and all correspondence, interoffice memorandums [sic], e-mails or the like pertaining to me or any of my accounts including investment accounts, checking accounts, savings accounts, money market accounts, loan accounts or the like from the date of their inception down through and including the present date.

> 5. Copies of any and all wire transfers, cashier's checks, certified checks or the like reflecting the transfer of any sums from investment accounts, checking accounts, savings accounts, money market accounts, loan accounts or the like from the date of their inception down through and including the present date.

6. Copies of any and all loan documents secured or unsecured, mortgages, notes, promissory notes, deeds of trust or the like either signed by me as a co-maker, guarantor or endorser on loan transactions between Compass Bank and Jean Sirote. In addition, any and all account statements, payment schedules, amortization schedules and any and all other documents evidencing payments made on all loan accounts with my name on such account from the date of their inception down through and including the present date.

Please have these documents available for Mr. Cumbie's or Mr. Wolfe's inspection within seven (7) days from the date of this letter.[18]

While this letter does arguably contain sufficient information to allow Compass to identify plaintiff's name and account, as required by § 2605(e)(1)(B)(i), it does not include a statement of reasons for plaintiff's belief that the account is in error, as required by § 2605(e)(1)(B)(ii). Plaintiff argues that the letter nonetheless satisfies the alternative clause of § 2605(e)(1)(B)(ii), by providing sufficient detail regarding the information he was seeking from defendants. There can be no question that plaintiff's letter requests a large amount of information. In fact, plaintiff essentially requests every piece of information Compass Bank has ever had that relates to him or any of his accounts. The problem is that it is not clear how any of the requested information actually relates to the servicing of any of plaintiff's accounts, as required by RESPA.

Courts routinely interpret section 2605 as requiring a QWR to relate to the *servicing* of a loan, rather than the *creation* or *modification* of a loan. *See Consumer Solutions REO, LLC. v. Hil-*

---

**18.** Doc. no. 8 (defendants' motion to dismiss), at Exhibit 1. As defendants point out, the court may consider this letter without converting defendant's motion to dismiss to a motion for summary judgment. Federal Rule of Civil Procedure 12(d) states that,

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(d). Even so, there are several circumstances in which a court may consider matters outside the pleadings when ruling upon a 12(b)(6) motion to dismiss, without formally converting it to a Rule 56 motion for summary judgment. *See, e.g., Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999) (observing that there are some circumstances in which "the usual rules for considering 12(b)(6) motions are . . . bent"). One such circumstance arises when a defendant attaches to its motion to dismiss a document that is central to the claims in a plaintiff's complaint, and the contents of that document are not in dispute, the court may refer to the document without converting the motion into one for summary judgment. *Harris,* 182 F.3d at 802 n. 2 (observing that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"). Stated differently, a court may consider such documents as

> part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). . . .

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). The December 10, 2009 letter is referred to in plaintiff's complaint, and is central to plaintiff's RESPA claim. Therefore, the court is allowed to consider the letter without converting defendant's motion to dismiss to a motion for summary judgment.

*lery*, 658 F.Supp.2d 1002 (N.D.Cal.2009) (dismissing RESPA claim with prejudice because plaintiff's "QWR" disputed the validity of a loan and not its servicing); *MorEquity, Inc. v. Naeem*, 118 F.Supp.2d 885, 901 (N.D.Ill.2000) (dismissing plaintiff's RESPA claim after finding that none of the irregularities alleged in the "QWR" related to servicing as defined by section 2605); *Philips v. Bank of Am. Corp.*, 2010 U.S. Dist. LEXIS 35131 (finding defendant had no duty under RESPA to respond to plaintiff's "QWR" because it related to origination and modification of a loan, not its servicing).

*Gates v. Wachovia Mortgage, FSB*, No. 2:09–cv–02464–FCD/EFB, 2010 WL 2606511, at *3 (E.D.Cal. June 28, 2010) (emphasis supplied). In *Gates*, the district court concluded that the document the plaintiff claimed to be a qualified written request did

> relay any servicing error. The purported QWR contains no statement of plaintiff's belief as to the existence of a servicing error, nor does it contain anything to put Wachovia on notice of a servicing error. Rather, the letter is primarily aimed at uncovering documents relating to the ownership of the obligation, as well as seeking rescission or modification by calling into question the validity of the loan.... However, neither an inquiry into the ownership of a loan, nor an allegation of defective loan documentation, are sufficient to transform an otherwise non-qualifying correspondence into a QWR. *See Hillery*, 658 F.Supp.2d 1002; *MorEquity*, 118 F.Supp.2d 885, 901. Moreover, while plaintiff's letter requests a "statement of all payments made on this loan," this request is similarly insufficient to meet the requirements of RESPA. A simple inquiry into payments made, without more, cannot be interpreted as either "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error," or, "provid[ing] sufficient detail to the servicer regarding other information sought by the borrower," as required by RESPA. 12 U.S.C. § 2605(e)(1)(B)(ii). In other words, *an unadorned request for a statement of payments made toward a loan is not an allegation of a servicing error.*

*Gates*, 2010 WL 2606511, at *3 (bracketed alteration in original, ellipses and italicized emphasis added).

Similarly, in *MorEquity*, the court considered a counterclaim that MorEquity had failed to timely respond to a qualified written request by the plaintiff.

> None of the irregularities alleged in the counterclaim, however, relate in any way to the "servicing" of the loan, as that term is defined in the statute. *The counterclaim alleges a forged deed, and irregularities with respect to the recording of the two loans, but makes no claim with respect to improper servicing.* There are no claims, for example, that MorEquity did not give the Naeems credit for any periodic payments made, which is how the statute defines servicing. According to the allegations of the counterclaim, the letter sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the Naeem account balance. Therefore, the request did not relate to "servicing" of the loan....

*MorEquity*, 118 F.Supp.2d at 901 (emphasis supplied). *See also Hillery*, 658 F.Supp.2d at 1014 ("That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan.").

Here, all of plaintiff's allegations relate to the creation and modification of the

Deeds of Trust. He has alleged no facts to support any claim that defendants improperly received his periodic payments, or improperly used those periodic payments to make payments of principal and interest. Stated differently, plaintiff is not concerned that the balance of the account has been calculated incorrectly, or that payments have been improperly applied; instead, he is concerned that his name should never have been on the account in the first place. Consequently, the court has no reason to construe the requests in his December 10, 2009 letter as relating to anything other than the forgeries that are the subject of his complaint. This is true despite the fact that plaintiff requested account statements, payment schedules, and other documents evidencing payments made on the accounts. *See Gates,* 2010 WL 2606511, at *3 ("[A]n unadorned request for a statement of payments made toward a loan is not an allegation of a servicing error."). Therefore, plaintiff has failed to state a claim for defendants' failure to comply with a qualified written request under RESPA upon which relief can be granted.

## IV. CONCLUSION

### A. Federal Claims

Plaintiff has attempted to assert federal claims for damages related to the forgery of two Deeds of Trust under statutes that were designed to ensure the meaningful disclosure of credit terms in consumer transactions, *see* 15 U.S.C. § 1601(a) (TILA), and to protect consumers from unnecessarily high settlement charges in residential real estate transactions, *see* 12 U.S.C. § 2601 (RESPA). For the reasons set forth above, his claims simply are not cognizable under those statutes. Therefore, plaintiff's claims for violations of the federal Truth in Lending Act and the federal Real Estate Settlement Procedures Act (Counts Three and Four, respectively) are due to be dismissed with prejudice.

### B. State Law Claims

■ Jurisdiction over plaintiff's remaining claims—for breach of contract, breach of fiduciary duty, fraud, and deceit under Alabama law (Counts One, Two, Five, and Eight, respectively, of plaintiff's original Complaint, and Counts One, Two, Five, and Six, respectively, of plaintiff's proposed Amended Complaint)—was based upon 28 U.S.C. § 1367, the statute governing supplemental jurisdiction over state law claims. In cases where the court's jurisdiction is based solely upon a federal question, the district court has discretion to entertain state claims that are "supplemental" to the federal claim. See 28 U.S.C. § 1367(a). The district court may decline to exercise supplemental jurisdiction when:

(1) the claim raises a novel or complex issue of state law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) *the district court has dismissed all claims over which it has original jurisdiction,* or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

■ Here, plaintiff's federal claims have been eliminated. There is no independent

basis for this court to assert jurisdiction over plaintiff's state law claims.[19] Accordingly, this court will decline supplemental jurisdiction over the remaining state law claims, and will exercise its discretion to dismiss those claims.

## V. ORDERS

In accordance of all of the foregoing, defendants' motion to dismiss plaintiff's complaint is GRANTED. Plaintiff's motion for leave to amend his complaint is DENIED, as any amendment would be futile. Plaintiff's claims for violations of the federal Truth in Lending Act and the federal Real Estate Settlement Procedures Act (Counts Three and Four, respectively) are DISMISSED with prejudice. Plaintiff's claims for breach of contract, breach of fiduciary duty, fraud, and deceit under Alabama law (Counts One, Two, Five, and Eight, respectively, of plaintiff's original Complaint and Counts One, Two, Five, and Six of plaintiff's proposed Amended Complaint) are DISMISSED, but without prejudice to plaintiff's right to refile them in an appropriate state court. Plaintiff's motion to exclude Exhibits C, D, and E to defendants' response to plaintiff's motion for leave to amend his complaint is DENIED as moot, because it was not necessary for the court to consider any of those exhibits in ruling on the substantive motions herein.

Costs are taxed to plaintiff. The Clerk of Court is directed to close this file.

---

19. Plaintiff cannot assert federal jurisdiction based on satisfaction of the requirements of the diversity statute, 28 U.S.C. § 1332, because complete diversity of citizenship is not present. *See* 28 U.S.C. § 1332(a)(1) (requiring that, in addition to an amount in controversy exceeding $75,000, the civil action must be between "citizens of different States"). Plaintiff is a resident of Alabama, as are the individual defendants Amy L. Shehan and Lisa D. Williams. *See* Amended Complaint, at ¶ 5.